VIRGINIA R. S. BUCHANAN et al., Appellants, v. LOUISIANA PURCHASE EXPOSITION COMPANY and MISSISSIPPI VALLEY TRUST COMPANY.

Division One, July 11, 1912.

1. **BILL OF EXCEPTIONS: Order of Approval: Signature of Trial Judge: Nunc Pro Tunc Entry.** Where an order approving the bill of exceptions was made by the trial judge on the 15th of September, 1908, and was entered in the vacation docket on that date, and a recital thereof on the same day was entered on the judgment roll, but the trial judge failed to sign the order at the time he made it, such omission is cured by the affixing of his signature by the judge April 3, 1912.

2. **LEASE: Covenant for Delivery of Possession: Breach.** A lessee who, though bound by his lease to deliver to the lessors on a day certain the free and peaceable possession of every part of the lands, puts a wrecking company on the property which, while tearing down buildings erected by the lessee, remains thereon for 150 days after the expiration of the lease, is liable in damages for a breach of his covenant.

3. ———: ———: ———: **Penalty.** Plaintiffs leased to the Louisiana Purchase Exposition Company seventy-five acres of unimproved land contiguous to the park allotted by the city for exposition purposes and therefore indispensable to the exposition company, at a yearly rental of $12,000. The exposition company, after the World's Fair closed, contracted with a wrecking company to remove the buildings on the leased prop-

245 Mo.—22

erty, and the wrecking company failed to remove from the premises until 150 days after the expiration of the lease. The lease provided that the lessee should pay sixty-six dollars a day for every day the property should be withheld from the lessors after the expiration of the lease, or nearly twice the amount of the rent required under the lease. *Held,* that the provision for sixty-six dollars a day was a penalty, and that the recovery of the plaintiffs should be measured within the limits of the contract by what they were actually damaged by being kept out of possession.

*Held,* by WOODSON, J., that, the sum fixed by the lease for withholding the premises being the same as that fixed by Sec. 7879, R. S. 1909, as damages for withholding leased property, the provision should not be held void.

## Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

REVERSED AND REMANDED.

*Lyon & Swarts* and *W. M. Williams* for appellants.

(1) The contracts between the exposition company and the wrecking company show the latter was to have possession of the land, and was a subtenant, at least for such time, up to June 30, 1905, as would be necessary for the removal of the structures on the land. (a) This is apparent from the language of the contracts and the conferences attending their execution. Meyer v. Christopher, 176 Mo. 580; County v. Wood, 84 Mo. 507; Pickering v. O'Brien, 23 Pa. St. 125; Heywood v. Falmer, 18 L. R. A. 49; Alcorn v. Morgan, 77 Ind. 184. (b) The construction given to the contracts by the parties is the best evidence of the meaning to be attributed to them. The letters from the exposition company demonstrate that a failure by the wrecking company to remove the buildings before the expiration of the lease would constitute a holding over by the exposition company. Myer v. Christopher, 176 Mo. 595; Rose v. Carb. Co., 60 Mo. App. 28. (c) It is apparent from the practical construction of the con-

tract by the parties in giving the actual physical possession of the land to the wrecking company and in depriving the appellants of any opportunity to enter upon the land. Depot Co. v. Railroad, 131 Mo. 305; Dickson v. Railroad, 168 Mo. 90. (2) The possession of the land by the wrecking company, upon the termination of the lease and thereafter, is equivalent to the holding over by the exposition company, and that irrespective of the relation between them. Jones on Landlord & Tenant, Sec. 544; Kerr v. Simmons, 8 Mo. App. 431; Hughes v. Hood, 50 Mo. 353; Schilling v. Holmes, 23 Cal. 230; Mason v. Wierengo, 113 Mich. 153; Henderson v. Squire, 19 L. R. A. 601; Lubetkin v. Brewing Co., 21 Abb. N. C. 304; Sullivan v. Ringler, 171 N. Y. 593; Bacon v. Brown, 9 Conn. 334; Dimock v. Van Bergen, 12 Allen, 551; Morgenthau v. Beaton, 88 N. Y. Supp. 359; Brewer v. Knapp, 1 Pick. 355; Moffatt v. Smith, 4 N. Y. 126. (3) The various buildings and structures erected by the exposition company practically covered the land leased to it. The act of the exposition company in permitting all of this property to remain on the land after the expiration of the lease, and in the same condition as prior to such expiration constitutes a holding over. The law demands of the tenant, upon the termination of the lease, a delivery in fact, not theoretical, of free and peaceable possession. McAdam on Landlord & Tenant (3 Ed.), p. 90; Taylor on Landlord & Tenant, Sec. 524; Stevens v. Pautkind, 95 Mich. 145; Darr v. Barney, 12 Hun, 259; Oussani v. Thompson, 43 N. Y. Supp. 1061; Schuyler v. Smith, 51 N. Y. 309; Vosburgh v. Corn, 23 App. Div. (N. Y.) 147; Cavenaugh v. Clinch, 88 Ga. 610; Lubetkin v. Brewing Co., 21 Abb. N. C. 304. (4) The wrecking company was the agent of the exposition company to keep the latter's obligation to the appellant's to remove the buildings, structures and debris. Where a tenant remains in

possession after the termination of the lease, either by himself or his agent, to remove property which the tenant is under obligation to remove, it is a holding over by the tenant.

*Joseph H. Zumbalen* and *Ferris & Ferris* for respondents.

(1) The record proper does not show any order of court directing the bill of exceptions to be filed and made part of the record; hence there is nothing here for review but the pleadings and judgment. R. S. 1909, Sec. 2029; State v. Paul, 203 Mo. 685; Hill v. County, 195 Mo. 514; Harding v. Bedoll, 202 Mo. 634; Alt v. Dines, 227 Mo. 422; Dev. Co. v. Iron Co., 98 Va. 700; Hake v. Strubel, 121 Ill. 321; 4 Wait's Practice, 573; 15 Ency. Plead. & Pr. 340. (2) (a) By the contract of sale from the exposition company to the wrecking company, the latter acquired no interest in or right of possession to the land, but only a license to go upon the land for the purpose of dismantling and removing the buildings and other personal property. The exposition company by the terms of the contract, and as a matter of fact, retained complete possession of the demised land to the end of its term. 25 Cyc. 649; Tiedeman, Real Property, Secs. 651, 652, 18 Am. & Eng. Ency. Law (2 Ed.), 1127, 1128; Hanly v. Wood, 2 B. & Ald. 736; Lunsford v. Lead Co., 54 Mo. 426; Chynowitch v. M. & S. Co., 74 Mo. 173; F. & M. Co. v. Cole, 130 Mo. 1; Love v. Am. S. Co., 89 Mo. App. 680; Nelson v. Nelson, 30 Mo. App. 189; Boone v. Stover, 66 Mo. 430; Rochester v. Mining Co., 86 Mo. App. 447; Reed v. Maryfield, 10 Met. (Mass.) 155; Glynn v. George, 20 N. H. 114; Fish v. Capwell, 18 R. I. 667; Bruley v. Garvin, 105 Wis. 625; Percival v. Chase, 182 Mass. 375; Rockport v. Granite Co., 177 Mass. 246; Rogers v. Cox, 96 Ind. 157; Constant v. Abell, 36 Mo. 180. (b) The possession of the land being with the exposition com-

pany, its withdrawal from the land on the last day of its term, together with its written notice of surrender of the premises to the lessors on that day, revoked the license granted to the wrecking company and released the exposition company from all further obligation to pay rent. May v. Luckett, 48 Mo. 473; Walser v. Graham, 60 Mo. App. 329; Mitchell v. Blossom, 24 Mo. App. 48; 13 Am. & Eng. Ency. Law (2 Ed.), 653. (c) Clauses 4 and 8 of the lease are independent of each other, so that a breach of the former covenant by failure to remove buildings, etc., during the term, would not of itself constitute a holding over which would render the exposition company liable for rent under the latter. Mitchell v. Blossom, 24 Mo. App. 48; Speers v. Flack, 34 Mo. 101; Ketcham v. Ochs, 70 N. Y. Supp. 268; Thomas v. Frost, 29 Mich. 336.

STATEMENT.—Plaintiffs sue on a bond executed by defendants to secure the performance of the covenants of a lease of about seventy-five acres of land, made by plaintiffs on the first day of July, 1902, to defendant, the Louisiana Purchase Exposition Company, for a term of three years. The rent reserved was $12,000 per year, payable in monthly installments. The contract of lease required the execution of the bond sued on before the lessee should enter into possession of the premises, and required the lessee to remove, at its own expense, all nuisances created on said lands with its permission or license, and all buildings put on them by defendants' permission or license, and all debris thereon before the end of the term; and also at the termination of the lease to deliver "the free and peaceable possession of every part of said lands" to the lessors. The contract contained a further clause binding the lessee to pay to the lessors sixty-six dollars for each and every day it failed to deliver said lands after the termination of the lease, whether by limitation or forfeiture.

The petition counts upon an alleged breach of the foregoing stipulations, claiming $3000 for failure of the lessee to comply with the obligation as to removal, and claiming further for an alleged breach of a covenant to surrender possession, damages in the sum of $9900, being sixty-six dollars per day for the 150 days after the termination of the lease during which there was a failure of delivery of the lands. The bond in suit was executed by the lessee and its co-defendant in the sum of $50,000, and was made payable to plaintiffs in this action on condition to be void on the faithful performance of the covenants contained in the lease.

The answers of defendants were general denials, except the admission of their respective corporations. Jury was waived, and the cause was submitted to the court. It appeared on the trial, that on the day of the cessation of the World's Fair (November 30, 1904) to whose use this land had been let, the exposition company made a sale of all the buildings, structures and materials situated on this land and elsewhere, which had been used by it for exposition purposes, to the Chicago Wrecking Company; that the purchaser of said property mortgaged it back to the exposition company to secure some deferred payments of the price; that the wrecking company took possession immediately and began the demolition of the agricultural building, which was situated entirely across the lands leased by plaintiffs to the exposition company. During the course of their work, the wrecking company received three letters from the exposition company, calling attention to the contract of the lease of the land in controversy and the provision therein as to the payment for each day the lessee should fail to deliver possession, and urging the wrecking company to expedite and conclude its work so that the lands could be surrendered as prescribed in the lease; and stating that unless this was done the

exposition company would employ men for that pur-
pose at the expense of the wrecking company; and
adding, "We shall turn over the leased property to
the owners thereof, and so far as the exposition com-
pany is concerned surrender complete possession"
at the expiration of the lease. The wrecking company
did not remove the property purchased by it before
the date of the expiration of the lease to the expo-
sition company (June 30, 1905) but continued the oc-
cupancy of said lands and the removal of property
therefrom for 150 days after said date. When the
wrecking company left the premises there remained
thereon considerable debris and much of the founda-
tions of the buildings, to remove which involved great
expense to the lessors. On the date of the expiration
of its lease the exposition company, by letter, June
30, 1905, informed the lessors that final payment of
rent had been made according to the terms of the lease,
and notified them that said lessee surrendered, yielded
up and entirely withdrew from the possession of all
parts of the land described in said lease. On the day
following, July 1, 1905, the exposition company noti-
fied the wrecking company that the property in ques-
tion had been turned over to the lessors, and advised
it to arrange with the owners of the land for permis-
sion to move its property or to have it remain thereon.
To the letter of June 30, 1905 to them, the plaintiffs
replied calling the attention of the exposition com-
pany to the several clauses of its lease, and stating that
there had been no delivery in fact of the premises
notwithstanding what was stated in said letter to
them. The exposition company did nothing further
in the matter.

Upon these facts the trial court rendered judg-
ment for $1200 in favor of plaintiffs as damages for
the failure to remove the debris on the ground and
640 poles standing in the soil thereof, and other items.
No appeal was taken from this finding. The trial

court further held that the foregoing facts constituted no breach of the stipulation in the lease to surrender the premises, and that plaintiffs could recover nothing on that count of their petition. From a judgment in accordance, plaintiffs appealed.

## OPINION.

BOND, C.—I. It is insisted by respondents, that the order of approval of the bill of exceptions which was made in vacation was not then signed by the trial judge, and that this omission is fatal to the consideration of said bill on appeal. It appeals, however, from a supplemental abstract filed by appellants, a certificate of the clerk, and also the certificate of the trial judge, that an order approving the bill of exceptions was made by the trial judge on the 15th of September, 1908, and was entered in the vacation docket on that date, and a recital thereof on the same day was entered on the judgment roll, and that the omission of the trial judge to affix his name to this order at the time he made it was supplied by his subsequent signature affixed on the 3d of April, 1912. This *nunc pro tunc* entry cured the imperfection. [R. S. 1909, Secs. 2119, 2120; Cooley v. Railroad, 149 Mo. 487.] The record proper shows the entry of an order permitting the filing of the bill of exceptions in this case in vacation and prior to the 4th of October, 1908. It was approved and endorsed by counsel for respondent, and submitted to the trial judge to be signed, approved and ordered to be made a part of the record within the *currency* of time previously allowed appellants. The only irregularity that occurred was his omission to affix his signature to a proper order of approval and directing the record of the bill of exceptions made by him. This having been properly rectified, the bill of exceptions was filed in substantial compliance with the statute. [R. S. 1909, Sec. 2029.] And we overrule the contention of respondent on this point.

II. Appellants assign for error the refusal of the trial court to make any finding in their favor under the clause of the lease providing for the surrender of the premises at the expiration of the term. This clause obligated the lessee to deliver to the lessors the free and peaceable possession of very part of said lands, or in default thereof to pay sixty-six dollars for each day it was withheld. This provision of the contract was unconditional, unambiguous and certain in its terms, and clear and distinct in meaning. At the time of the accrual of this obligation, the wrecking company was in possession of the lands, engaged in tearing down and removing the buildings and structures and material thereon, which had been sold to them by the lessee. The possession of the lands by the wrecking company was acquired under contract and in privity with the lessee, and was used by it for the purpose of taking away its own property and of discharging the obligation of removal assumed by the lessee under the terms of the lease to it. Neither of these duties had been fully performed by the wrecking company on the 30th of June, 1905, the date of the expiration of the lease to the exposition company. The impossibility of then delivering the premises was the direct result of the action of the lessee in putting the wrecking company on the premises to do work of a kind that necessitated the possession of the lands until fully performed, and which had not been done at the expiration of the lease. The failure of the wrecking company to remove the buildings and structures on the land before the expiration of the lease to the exposition company, and the continued occupancy of the property thereafter by the wrecking company constituted a breach of the unconditional contract on the part of the exposition company that the wreckage should be removed before, and the premises delivered at the time of the expiration of the lease to it. Its liability for the first breach was properly adjudged by the

trial court, and no appeal was taken from that finding. That it should have been adjudged also for the second breach, we think, under the facts of this case, can admit of no doubt.   There is no principle of law better settled than that a breach by the promisor of his unconditional contract lawfully entered into, is not to be excused by any act of his own or those in privity with him which prevented or rendered impossible the performance of his agreement.    [Jones v. United States, 96 U. S. 24; Clark on Contracts, Sec. 281, p. 679.]   In this case the only obstacles to the performance of the positive engagement made by the exposition company to put its lessors in the full possession of every part of the leased premises at the expiration of the term, was caused by the occupancy of the lands of persons in privity with the lessee.   This was not a contract known, when made by the parties thereto, to be impossible of performance.   It was not unlawful when made nor did it become so afterwards.   Hence it could not be breached by the promisor without answering in damages.   The particular relationship of the wrecking company to the lessee, whether tenant or licensee, is a matter of no legal significance.   The wrecking company was on the premises by virtue of a possession delivered to it by the lessee, and the lessee was legally powerless to deliver to anyone a possession which could thereafter be used to defeat its own obligation to restore the premises to its lessors. Whatever the status of the wrecking company, it was created solely by contract with the exposition company, and hence made the contractee, the wrecking company, a *privy* of the contractor.   This is self-evident. When the time came to vacate the premises, the exposition company simply proposed itself to withdraw but did not propose to compel the withdrawal of the wrecking company, whom it had previously placed in possession of the premises, and who refused to withdraw but continued for 150 days thereafter to hold

possession against the lessors. In the face of these
facts, the proposal contained in the letter of June 30,
1905, from the lessee to the lessors was an inutile for-
mality which did not amount to a surrender of the
premises either in fact or in law, for at the time it was
written the lands were in the adverse occupancy of the
wrecking company under the possession given to it by
its contract with the exposition company, and neither
in said letter nor otherwise did the exposition company
propose to *effectuate* its tender of surrender of the
premises by dispossessing the wrecking company. The
responsibility of the exposition company to its own
lessors was full, complete and binding under the terms
of the lease and could not be changed or shifted to an-
other without the consent of its lessors. It is not
claimed that the lessors have in any manner con-
sented that the contract of the exposition company
with them should be lessened or altered by the results
of the contract made between the exposition company
and the wrecking company. Certainly the exposition
company can no more defend a breach of its own con-
tract by setting up the wrongdoing of one whom it
placed in a position to cause such breach, than it could
to set up its own act as the defense to such breach.

Our conclusion is, that the failure of the exposition
company to turn over to its lessors the free and peace-
able possession of every part of their land on the 30th
of June, 1905, was a breach of its covenant so to do,
and that the trial court erred in its ruling to the con-
trary.

III. The important question in this case is the
extent to which plaintiffs should recover for breach
of the contract to surrender the premises. By the
terms of the lease, the damages stipulated therein
are "a rental of sixty-six dollars for each and every
day that the said lessee fails to deliver said lands or
any part thereof." Was this sum a penalty or a proper

liquidation of damages? This must be determined by the intentions of the parties, the subject-matter of the contract, and the surrounding circumstances, for it is the established law that the inclusion of a penalty in a contract is not obviated by terming it liquidated damages or using any other form of expression for the purpose of disguising an attempt to enforce a penalty under the form of a contract. Disregarding nomenclature and turning to the essential character of the damages referred to in the contract, a comprehension of their real nature can be arrived at by considering, (1) whether the damages following a breach of the agreement are such as can be definitely or readily ascertained by evidence or fixed rules of computation; or, on the other hand, whether the damages are such that it would be difficult, if not impossible, to measure them by any exact pecuniary standard or calculate them with approximate accuracy. In the first instance, if the amount stipulated is greatly disproportionate to the loss following a breach of the contract, the court will construe it to be a penalty and restrict the recovery to such damages as were actually suffered. In the second instance, if the amount specified appears to be a reasonable estimate of undefinable and unascertainable damages, the court will construe it as a proper liquidation and enforceable according to the agreement of the parties. A clear statement of the basis of this doctrine, after a review of the decisions, is made by Mr. Sutherland: "To be potential and controlling that a stated sum is liquidated damage, that sum must be fixed as the basis of compensation and substantially limited to it; for just compensation is recognized as the universal measure of damages not punitory. Parties may liquidate the amount by previous agreement. But when a stipulated sum is evidently not based on that principle, the intention to liquidate will either be found not to exist or will be disregarded and the stated sum treated as a penalty.

Contracts are not made to be broken; and hence, when parties provide for the consequences of a breach, they proceed with less caution than if that event was certain, and they were fixing a sum to be paid absolutely. The intention in all such cases is material; but to prevent a stated sum from being treated as a penalty the intention should be apparent to liquidate damages in the sense of making just compensation; it is not enough that the parties express the intention that the stated sum shall be paid in case of a violation of the contract. A penalty is not converted into liquidated damages by the intention that it shall be paid; it is intrinsically a different thing, and the intention that it shall be paid cannot alter its nature. A bond, literally construed, imports an intention that its penalty shall be paid if there be default in the performance of the condition; and formerly that was the legal effect. Courts of law now, however, administer the same equity to relieve from penalties in other forms of contract as from those in bonds. The evidence of an intention to measure the damage, therefore, is seldom satisfactory when the amount stated varies materially from a just estimate of the actual loss finally sustained." [1 Sutherland on Damages (3 Ed.), Sec. 283, pp. 722-730; Basye v. Ambrose, 28 Mo. l. c. 45; Potter v. McPherson, 61 Mo. 240; Cochran v. Railroad, 113 Mo. 359; May v. Crawford, 150 Mo. l. c. 531, 532; Thompson v. St. Charles County, 227 Mo. l. c. 238; Davis v. Gillett, 52 N. H. 126; Muldoon v. Lynch, 66 Cal. 536; Clements v. Railroad, 132 Pa. St. 445; 13 Cyc. 91, 92, 93, 94, 95, 96 and 97.]

In the case before us the subject-matter of the lease was termed "acre land." It contained no houses or buildings, and had no rental value for such purposes. It could only have been rented for farming or tillable purposes. The productive or income value thus arising was a matter of definite and easy ascertainment. With no buildings or improvements on it,

it could only have a value for urban purposes not requiring these, or for farming purposes.   Whether its market value for either purpose was increased or diminished during the five months plaintiffs were deprived of its possession was a matter within the knowledge of competent witnesses.   A stipulation for damages at the rate of sixty-six dollars per day seems to be out of just proportion to the loss actually suffered by plaintiffs.   The land in question was so situated that its acquisition for their purposes became practically indispensable after the location of the World's Fair, for it was contiguous to the portion of the park allotted by the city for that purpose.   Under the stress of the necessity to obtain it, the exposition company paid $1000 a month for its temporary use.   The lessors, however, prescribed as a further condition, that in case the property was not redelivered on the day of the expiration of the lease they should receive $1980 per month, or about twice what they had been able to obtain during the continuance of the lease.   We think the inclusion of this large sum although termed a rental, was the insertion of a penalty in the lease contract far beyond any loss which the lessors experienced by the constructive holding over of the premises for five months, and that the recovery of plaintiffs should be measured within the limits of the contract by what they were actually damaged by being kept out of possession of their "acre land" for the time stated.   A fair and just measure of the damages actually sustained by the lessors can be ascertained and definitely fixed upon a hearing of relevant testimony on a retrial of this case.   To that extent they should recover for the breach of the covenant to surrender the premises on the part of the exposition company, in that it failed to cause the removal, by legal necessary steps, of the persons whom it placed in possession of the premises and who continued thereon after the expiration of the lease.   In

all other respects the exposition company sought in every possible way to restore these premises at the time it agreed to do so. It clearly was not guilty of a willful holding over. Hence the statutes (R. S. 1909, secs. 7877, 7879) have no application. Neither was there anything in the facts in this case which likens it to the case before the court where it was ruled that a lessee might make a valid agreement for liquidated damages enforceable as such where it appeared that he had rented a city *building* subject to forfeiture of the lease thereof in case of alterations without the consent of the lessor and that he made such alterations and refused thereafter to surrender the property. In that case the court said: "In thus voluntarily retaining the property, it is to be presumed that he considered the use of it of greater value to him than the double rent." [Walker v. Engler, 30 Mo. l. c. 134.]

In the case at bar the lessee had no intention to retain possession and used every effort, except force or legal process, to remove the party whom it had let into possession of the property. Moreover, the future possession of this vacant land could have been of no possible advantage or benefit to the lessee, since the purpose for which it had been rented ceased to exist after the close of the fair.

For the foregoing reasons, the judgment is reversed and the cause remanded. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BOND, C., is adopted as the opinion of the court. All the judges concur; *Woodson, J.,* in separate opinion.

## CONCURRING OPINION.

WOODSON, J.—I concur in paragraph one of the opinion filed herein, by our learned Commissioner BOND; but I dissent as to the second paragraph thereof, for the reason that the lease fixing the amount of the rental to be paid for holding possession of the premises after the expiration of the lease, is exactly

the same as that prescribed by Sec. 4106, R. S. 1899, now Sec. 7879, R. S. 1909, and is not therefore prohibited by public policy, as is generally the case where stipulated damages are agreed to for the breach of an ordinary contract.

Such a contract being in harmony with both the letter and spirit of the law, I am unable to see how it can violate the law of contracts, or the spirit of public policy, which is expressed through the legislative department of the government.