JAMES E. WILSON, Plaintiff in Error, v. W. T. PAGE,
Defendant in Error. —325 S. W. (2d) 294.

Eastern Section.  September 10, 1958.

Rehearing denied November 7, 1958.

Certiorari denied by Supreme Court January 23, 1959.

476

Kolwyck & Clark, Chattanooga, for plaintiff in error.

H. Keith Harber, Chattanooga, for defendant in error.

McAMIS, P. J.   This is a suit for damages growing out of the collapse of the roof of a building owned by plaintiff W. T. Page who sued W. W. Gentry, the fabricator of a steel truss which failed, and James E. Wilson who erected the truss.   The case was tried before a jury which found in favor of Gentry but against Wilson.   The damages sustained by the plaintiff were fixed at $20,581.17 for which amount judgment was rendered against Wilson. The damages consist of (1) The cost of removing the original construction, (2) Reconstructing the building, (3) Loss of use of the building while being reconstructed and (4) Expenses incurred by a partnership composed of plaintiff and his brother in conducting the partnership business at another location.

The plaintiff moved for a new trial assigning, among other grounds, that there was no evidence to support the verdict of the jury dismissing the suit as to Gentry, the fabricator.   The Court overruled the motion and plaintiff has not appealed.   The defendant Wilson's motion for a new trial was overruled and he has appealed and assigned a number of errors.   We consider first the assignment that there is no evidence of negligence on the part of Wilson, the erector.

Prior to August 24, 1956, plaintiff and his brother operated a used car business on property owned by plaintiff who also owned adjoining lots.   About that date, the partnership acquired a dealer's franchise for Chrysler and Plymouth cars.   To take care of the additional needs of the partnership incident to this new undertaking plaintiff agreed to erect a building on the adjoining lot and lease it to the partnership at $600 per month.   It was contemplated that the building would be completed

and ready for occupancy when the 1957 models arrived about November 1, 1956.

Plaintiff employed a carpenter by the name of Lusk to supervise the construction of the new building and also employed a competent structural engineer named Hutson to draw plans for a steel truss to support the roof. There is no serious criticism of these plans. They were presented to defendant Gentry who agreed to furnish, fabricate and erect on the job all necessary steel construction for "around $8,600.00". Gentry, in turn, contracted with defendant Wilson to erect the steel on the job, apparently, without fixing the amount to be charged for that portion of the work. Plaintiff testified that he had no contract directly with Wilson for the erection of the truss.

Engineer Hutson testified that the building faces the east side of Rossville Boulevard and, that he designed three steel trusses each 48 feet in length consisting of two steel chords 6 feet apart to which there was to be welded steel supports and braces both in vertical and diagonal positions. The three trusses were to be supported by two steel "H" columns in the center of the building from the front to the back.

In measuring from the rear wall to determine the location of the H column nearest the rear wall, plaintiff's foreman, Lusk, placed it 6 inches too near the rear wall. When Wilson swung the rear truss, referred to in the record as T3A, into place on the H column and attempted to place the other end on the rear wall he discovered that it was 6 inches too long. After discussion between Lusk, Vanderslice, Wilson's foreman on the job, and Clark, Gentry's superintendent, it was decided that the only

solution was to cut T3A and shorten it by 6 inches. There is some uncertainty as to who issued the order to cut but we think that question is not controlling. There is evidence that Wilson's welder, Hutton, requested Lusk to use his square and mark the point of severance. Hutton then cut 6 inches off the end of the truss.

No measurements were made before T3A was cut, but the following morning Lusk discovered his mistake in locating the H column and so advised plaintiff. Under one permissible view of the evidence which we must assume the jury adopted, plaintiff then employed Wilson to restore the 6 inches by welding the severed portion back on the end of T3A. There is evidence that, in doing so, a new gusset plate should have been used to give greater welding surface. Hutton, however, used the original gusset plate which had been materially shortened in cutting the truss on the preceding day and made no request of Gentry for a new gusset plate. There is an abundance of evidence to the effect that, in restoring the 6 inches of T3A, Hutton only spot welded the diagonal and vertical in that section of the truss. He admits that he failed to properly weld these parts and we have no difficulty in holding that, under all the evidence, the questions of negligence and proximate cause were properly submitted to the jury. There is evidence that, even without a new gusset plate, the diagonal could have been securely welded by making the weld thicker.

But, assuming the contrary, having undertaken to restore T3A to its original length, considering the direful consequences of a weak member, a jury could well find that it was Wilson's duty to use care not to endanger the building by improper welding and placing an inade-

quately welded member in position without calling for a new plate or notifying plaintiff of the danger.

■■■ There is no merit in defendant's insistence that, as a matter of law, the cause of the damage was Lusk's mistake in locating the H column and plaintiff's failure to have the work done by a duly licensed contractor as provided by T. C. A. sec. 62-601 et seq. Lusk's mistake and the cutting of T3A did not cause the roof to fall. There was no roof at that time. The cause of the failure of the truss was the negligence of Wilson in putting a defective member of T3A in place without notice to plaintiff. The cause of action is based on tort and it is immaterial in what capacity Wilson was acting, whether as plaintiff's employee, as Gentry's employee or as an independent contractor. If Lusk had been a contractor duly licensed under the Act, the same duty would have devolved upon Wilson and whether or not Lusk was licensed plaintiff had a right to assume that Wilson would observe safety requirements and not endanger the building in the manner shown.

The question of plaintiff's right to recoup one-half the expenses incurred by the partnership in conducting the partnership business at another location, including rent, extra help, advertisements and telephone, while the building was in process of reconstruction seems clear. His right to recover the remaining one-half presents a question of some difficulty. In our opinion, however, the question was properly submitted to the jury.

As we have seen, plaintiff was under contract with his brother to have the building ready for occupancy about November 1, 1956, when the new models were expected. It was plaintiff's duty to minimize his damages and *if* he

was liable to his brother in damages for failure to perform this contract, he would not be compelled to have the amount judicially determined before discharging his liability and seeking recoupment from defendant. So, the question is: Was plaintiff liable to his brother for breach of contract and resulting damages sustained by his brother?

So far as appears, there was nothing in the contract exempting plaintiff from liability for failure to perform due to some unforeseen cause beyond his control.

■ It is a settled rule that where a person by his contract or agreement charges himself with an obligation possible to be performed, he must perform it, and he will not be excused therefrom because of unforeseen difficulties, unusual or unexpected expense, or because it is unprofitable or impracticable. Bryan v. Spurgin, 37 Tenn. 681; Clinchfield Stone Co. v. Stone, 36 Tenn. App. 252, 266, 254 S. W. (2d) 8; 17 C. J. S. Contracts sec. 459, p. 946.

■ Where performance becomes impossible by contingencies which should have been foreseen and provided against in the contract but were not, performance will not be excused. Dubois v. Gentry, 182 Tenn. 103, 184 S. W. (2d) 369.

"The question, how far a party shall be excused for the non-performance of an act which he may have engaged to perform, is admitted to be, in many cases, one of no little difficulty. It seems to be well settled, that if performance becomes impossible by the act of God, that is, by a cause which cannot be attributed to the party bound to do the act; and the impossibility, which hindered performance, was not among the probable contingencies

which *a man of ordinary prudence* should have foreseen and provided for, the non-performance will be excused. But if the performance becomes impossible by contingencies which should have been foreseen, and provided against in the contract, the party will not be excused; for it was his own folly that he did not, by his contract, exempt himself from responsibility in such contingencies. Pars. on Con. vol. 2, 184-5, 2 Sneed, 362-371; Chitty on Con. 734.'' Bryan v. Spurgin, 37 Tenn. 681. (Italics ours.)

The question being whether plaintiff exercised ordinary prudence in failing to provide against the contingency of negligent construction by persons of his selection, it was for the jury to say whether plaintiff should have provided by contract against such liability.

■ We recognize that there is an exception to this general rule and that performance will be excused if the act to be performed is necessarily dependent on the existence of a specific thing and performance becomes impossible by the destruction of the thing without fault of the promisor. Where the subject matter of the contract has been destroyed rendering performance impossible, the promisor is held to be discharged if the event which caused the destruction is such as could reasonably be supposed to have been within the contemplation of the parties. 12 Am. Jur. 945, 946, Contracts, Section 372.

''The principle excusing nonperformance of a contract because of the destruction or loss of the subject matter before the time for performance, without fault of the promisor, where the parties contracted on the basis of its continued existence, has been applied, or at least recognized in many cases. For instance, a contract to let

at a stated daily price a music hall for giving a series of concerts is conditional upon the continued existence of the hall and is terminated by destruction of the hall by fire. Likewise, a contract for allotment of space in a department store is to be considered as necessarily contemplating the continued existence of the building in which the space is allotted, so that destruction of the building will operate to terminate the contract.'' Ib. pp. 946, 947.

■ Assuming, however, that this exception would otherwise apply to relieve plaintiff of liability to his brother, we hold that it can not be applied in this case because there is proof that plaintiff contracted with Wilson to restore the truss to its original length for $100 and the act which prevented performance was, therefore, the act of one standing in privity of contract with plaintiff.

''There is no principle of law better settled than that a breach by the promisor of his unconditional contract lawfully entered into is not to be excused by any act of his own or those in privity with him which prevented or rendered impossible the performance of his agreement.'' Buchanan v. Louisiana Purchase Exposition Co., 245 Mo. 337, 149 S. W. 26, 28. See also Frost v. Chaplin Motor Co., 138 Me. 274, 25 A. (2d) 225, 139 A. L. R. 1144; 17 C. J. S. Contracts sec. 459, p. 949.

■ There was, therefore, no error in the refusal of the court to remit the damages sustained by the partnership.

Complaint is also made of the Court's refusal to grant certain special requests and the alleged over-emphasis placed on plaintiff's theory of liability along with alleged

under-emphasis on defendant's reliance upon the A. I. S. C. Code, said to govern conduct and practice in the steel erection and fabricating industry. These requests are too long to set out herein. We have considered them and do not find that any prejudicial error was committed in the charge as given. We think it was fair and adequate.

■ Finally, it is argued the jury or some members of it failed to be properly attentive and that the verdict is rested upon an improper hypothesis. It is elementary that a jury cannot impeach its verdict.

Affirmed at the cost of plaintiff in error Wilson.

Hale and Howard, JJ., concur.

## On Rehearing

McAMIS, P. J. Defendant Wilson has petitioned for a rehearing and for permission to re-argue the case.

The petition asserts that there is no evidence to support our holding that the truss was restored to its original length by welding back the 6 inches cut off the end on the preceding day. It is said the severed portion was not used and that the truss was in fact lengthened ''by welding onto the new end vertical two channel irons eight inches wide, which overlapped two inches, thus lengthening the truss the required six inches.''

If we erred in this respect, we fail to see how the result would be different in view of Hutton's admission that he failed to properly weld the diagonal and vertical members and the other evidence that he failed to use the available welding surface and only spot welded these members. It was for the jury to say whether this caused the roof

to fall. As said in our former opinion, having undertaken to restore the truss it was defendant Wilson's duty not to endanger the building by improper and unsafe welding.

Petitioner's assertion that we erroneously based recovery on breach of contract is refuted by the following taken from our opinion [325 S. W. (2d) 297]:

> "*The cause of action is based on tort* and it is immaterial in what capacity Wilson was acting, whether as plaintiff's employee, as Gentry's employee or as an independent contractor."

We did discuss the evidence tending to support an agreement by Wilson to restore the truss for $100 but only to show, under the authority cited on pages 8 and 9 of the opinion [325 S. W. (2d) 298], that plaintiff would not be excused from responding in damages to his brother since Wilson, under the evidence, *in restoring the truss,* stood in privity of contract with Wilson.

We see no point in again discussing defendant's insistence that the cause of the fall was the mistaken belief that the truss had to be shortened and the decision to cut it. This question was fully considered in our former opinion. There is nothing new offered on that question.

This case was given the most careful consideration by all members of the Court and we feel that we understood the theory and insistence of defendant. We see no reason to depart from our rule that oral argument will generally not be permitted on petition to rehear.

The petition is, therefore, denied.