**James Theodore MONTGOMERY, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Aug. 11, 1977.

Certiorari Denied by Supreme Court Oct. 24, 1977.

Richard H. Donnell, Jackson, for appellant.

Brooks McLemore, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, George Hymers, Dist. Atty. Gen., Jackson, for appellee.

## OPINION

TATUM, Judge.

The defendant, James Theodore Montgomery, was sentenced to fifteen years in the State Penitentiary upon a conviction of rape. Affirmed.

On this appeal, the defendant tests the sufficiency of the evidence and questions the action of the Trial Judge in refusing him a new trial because one of the jurors based his vote finding the defendant guilty out of fear of being "locked up" for the weekend.

The accredited evidence was that the victim and the defendant were previously acquainted. The defendant was an employee of OIC School in Jackson, Tennessee; the victim was a student. The defendant had assisted the victim in her admission to the school.

On 7 May 1976, the victim met the defendant by happenstance in front of a Kro-

ger store near the school. At the defendant's request, the victim consented to drive the defendant to his residence for some school material and to talk about a job for her.

The victim accompanied the defendant into his apartment where the victim had a soft drink and the defendant had two alcoholic drinks. The defendant offered the victim $150.00 to go to bed with him. When she refused, he forced her into the bedroom and had sexual intercourse with her forcibly and against her will.

She left the apartment immediately, drove around Jackson, until about 4:00 o'clock P.M. She then went to a baby-sitter's house to get her children. She went home and made an unsuccessful attempt to telephone her sister. Her boyfriend telephoned her and the victim told him of the rape. Her boyfriend took her to the Jackson-Madison County General Hospital, where she was examined by a doctor and the police were notified. She gave the doctor and the police officers an account of the rape.

The defendant did not testify but introduced two witnesses to establish an alibi.

In the first two assignments of error, the defendant says that the evidence preponderates against the verdict and that the verdict is not supported by any competent evidence. The defendant argues in support of these assignments that the testimony of the victim is uncorroborated. The rape statute, T.C.A. § 39–3701, does not require that the testimony of the violated female be corroborated. *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963); *King v. State*, 210 Tenn. 150, 357 S.W.2d 42 (1962). Unless the defendant shows that the evidence preponderates against the guilty verdict, we must overrule these assignments. *Webster v. State*, 1 Tenn.Cr. App. 1, 425 S.W.2d 799 (1967). The defendant has failed to bear this burden. We overrule these assignments.

After trial, one of the jurors swore that his decision to vote in favor of the

guilty verdict was based on his understanding that he would be "locked up" for possibly a weekend if no verdict was reached. He said this motivated him to vote for the guilty verdict. The defendant's third assignment is that this juror's oath, given after trial, entitled him to a new trial. We disagree. The record reflects that after the jury reported its verdict, the Trial Judge polled each member of the jury and each of them affirmed the verdict.

This evidence could not be considered to render the verdict void. *Batchelor v. State*, 213 Tenn. 649, 378 S.W.2d 751 (1964); *Lee v. State*, 121 Tenn. 521, 116 S.W. 881 (1909); *Wilson v. State*, 2 Tenn.Cr.App. 138, 452 S.W.2d 355 (1969); *Leach v. Leach*, 52 Tenn.App. 606, 376 S.W.2d 739 (1963); *Wilson v. Page*, 45 Tenn.App. 475, 325 S.W.2d 294 (1958).

In 1869, the Tennessee Supreme Court was considering this same question. A juror made an affidavit very similar to the one before us. In that case, the Supreme Court reached the same result we have reached today. *Galvin v. State*, 46 Tenn. 283 (1869).

The rule and its supportive reasoning is stated by the United States Supreme Court in *Mattox v. United States*, 146 U.S. 140, 148–149, 13 S.Ct. 50, 52, 36 L.Ed. 917 (1892):

"There is, however, a recognized distinction between what may and what may not be established by the testimony of jurors to set aside a verdict.

This distinction is thus put by *Mr. Justice Brewer,* speaking for the Supreme Court of Kansas in *Perry v. Bailey,* 12 Kan. 539, 545: 'Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve; its tendency is to produce bad faith on the part of a minority, to induce an apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict. But as to

overt acts, they are accessible to the knowledge of all the jurors; if one affirms misconduct, the remaining eleven can deny; one cannot disturb the action of the twelve; it is useless to tamper with one, for the eleven may be heard. Under this view of the law the affidavits were properly received. They tended to prove something which did not essentially inhere in the verdict,—an overt act, open to the knowledge of all the jury, and not alone within the personal consciousness of one.'

The subject was much considered by *Mr. Justice Gray,* then a member of the Supreme Judicial Court of Massachusetts, in *Woodward v. Leavitt,* 107 Mass. 453, where numerous authorities were referred to and applied, and the conclusions announced, 'that on a motion for a new trial on the ground of bias on the part of one of the jurors, the evidence of jurors as to the motives and influences which affected their deliberations, is inadmissible either to impeach or to support the verdict. But a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. So a juryman may testify in denial or explanation of acts or declarations outside of the jury room, where evidence of such acts has been given as ground for a new trial.' "

■ We have examined the above and many other authorities and find that the rule in Tennessee is that adopted in the Federal Rules of Evidence, Rule 606(b):

"(b) Inquiry into validity of verdict or indictment.—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question

whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about what he would be precluded from testifying be received for these purposes."

The affidavit of the juror in the case before us does not come within the exception to the rule. Examples of "extraneous prejudicial information" or "outside influence" would be the reading of prejudicial newspaper editorials by the jury during its deliberation, the imparting of prejudicial information to the jury by an officer having charge of it, or when a bailiff, who was a witness in the trial of the case is present in the jury room during the jury's deliberation.

Finding no error, we affirm the judgment of conviction.

WALKER, P. J., and DWYER, J., concur.