# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
April 19, 2004 Session

## DANNY SILSBE v. HOUSTON LEVEE INDUSTRIAL PARK, LLC

Appeal from the Chancery Court for Shelby County
No. CH-02-0191-1     Walter L. Evans, Chancellor

No. W2003-00717-COA-R3-CV - Filed September 3, 2004

This is a contract case.  On December 21, 2001, the parties entered into a contract granting the plaintiff an option to purchase real property.  The plaintiff was required to exercise his option by 5:00 p.m., January 21, 2002, either by delivering written notice by that date to the defendant corporation, or by mailing written notification, postmarked no later than January 21, 2002.  At the time the contract was executed, the parties were unaware that January 21 was a national holiday recognizing Martin Luther King, Jr.  On January 21, 2002, the plaintiff attempted to hand-deliver written notification of his intent to exercise the option, found no one at the defendant's office at the time and mistakenly assumed the office was closed because of the holiday.  On January 22, the plaintiff hand-delivered written notice to the defendant.  The defendant maintained that the option had expired.  The plaintiff filed this lawsuit, seeking a declaratory judgment that the January 22 notice was timely and that the defendant was obligated to sell him the property pursuant to the option contract.  After a trial, the trial court held in favor of the defendant, finding that the option had expired.  The plaintiff appeals, arguing impossibility of performance and mutual mistake.  We affirm, finding that the trial court did not err in concluding that the doctrines of impossibility of performance and mutuality of mistake are not applicable.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

John L. Ryder, Memphis, for the appellant, Danny Silsbe.

John D. Horne, Memphis, for the appellee, Houston Levee Industrial Park, LLC.

### OPINION

Plaintiff/Appellant Danny Silsbe ("Silsbe") and Defendant/Appellee Houston Levee Industrial Park, LLC ("Houston Levee"), entered into a contract granting Silsbe the option to purchase from Houston Levee two certain parcels of real estate in Shelby County.  The contract was

negotiated on Houston Levee's behalf by its sole owner and registered agent, Ray Mattingly. The contract, executed on December 21, 2001, provided:

> [Houston Levee] does hereby give and grant to [Silsbe], the right to purchase said above described parcel of real estate, at any time, from this date until 5:00 P.M. (CST), January 21, 2002. . . . If [Silsbe] exercises this option, [Silsbe] shall give [Houston Levee] written notice of his intention by the aforesaid date, said notice to be delivered in person or mailed by certified mail, return receipt requested, postmarked on or prior to the date herein specified, to the address of [Houston Levee] . . . .

Thus, in order to exercise the option, Silsbe was required to provide written notice to Houston Levee either by personal delivery on or before January 21, 2002, or by certified mail, postmarked on or before January 21, 2002. Both parties understood that Silsbe's notice of intent to exercise the option was to be given to Mattingly. Toward that end, Mattingly provided Silsbe with several telephone numbers, including his cell phone numbers, for Silsbe to contact him. At the time the contract was executed, both parties were unaware that they had set the deadline on the national holiday honoring Martin Luther King, Jr.

On January 21, 2002, neither Mattingly nor his agents received any notice that Silsbe had decided to exercise the option. On January 22, 2002, however, there was a flurry of activity designed to communicate Silsbe's intent to exercise the option. Silsbe hand-delivered a hand-written notice of intent to exercise the option to Mattingly's office assistant, Lisa Haddick ("Haddick"). Silsbe also telephoned both Mattingly and Houston Levee's attorney to tell them he wanted to exercise the option. Silsbe had his attorney fax a copy of the written notice to Houston Levee's attorney. The next day, Houston Levee's attorney notified Silsbe's attorney that the option had not been timely exercised and that Mattingly declined to extend the option.

On January 29, 2002, Silsbe filed this lawsuit, seeking a declaratory judgment that the notice provided to Houston Levee on January 22 was timely and that Houston Levee was therefore obligated to sell him the real property that was the subject of the option. In his complaint, Silsbe alleged in part that it had been impossible for him to provide notice by 5:00 p.m. on January 21, 2002, because January 21 was Martin Luther King, Jr. Day. He asked the trial court to construe the option contract in such a manner that the notice delivered to Haddick on January 22 would be deemed timely.

The trial was held on November 4, 2002. Silsbe testified at the trial. Silsbe described his attempts to deliver notice of his intent to exercise the option on January 21, 2002, in accordance with the terms of the contract. He testified that he called Mattingly's office that morning, and the telephone was answered by a recording. He did not leave a message. Later, at approximately 11:30

a.m.,[1] Silsbe went to Mattingly's office to hand deliver a type-written notice[2] of his intent to exercise the option. He said, however, that the building was quiet and the door to Mattingly's office was closed. Although the door to Mattingly's office had a mail slot, Silsbe did not leave his typed notice or any other writing at the office. When asked whether he saw the mail slot in Mattingly's office door, Silsbe vacillated as to whether he saw the mail slot in the door, or saw it and did not recognize it as something in which he could have dropped the notice. Silsbe, however, steadfastly maintained in his testimony that, in any event, he would not have left the notice in the mail slot, because he was trying to hand deliver the document in accordance with the terms of the contract. Silsbe admitted that he was aware that Mattingly's office door had a clock sign on it, indicating the time the staff would return. Silsbe said that he did not recall the time indicated on the clock when he went to Mattingly's office. He testified that he did not pay attention to the sign because he believed that clock signs are often inaccurate. Silsbe later called Mattingly's office at approximately 1:15 p.m., and no one answered. He testified that he did not recall a recording answering the phone. Silsbe admitted that he had been given Mattingly's cell phone number and knew how to reach Mattingly by mobile phone, but Silsbe did not recall whether he attempted to reach Mattingly by the alternate numbers.

Haddick, Mattingly's administrative assistant of ten years, testified at the trial. She said that Mattingly's office was open on January 21, 2002, Martin Luther King, Jr. Day, and that Mattingly had told her to expect something from Silsbe either by mail or by hand-delivery from Silsbe himself. She testified that the office regularly opens at 8:30 a.m. and closes at 5:00 p.m. The office staff takes its lunch break every day from either 11:30 a.m. to 12:30 p.m. or 12:30 p.m. to 1:30 p.m. The regular office procedure for the staff was to place on the office door a clock sign indicating when the staff would return from lunch. Haddick testified that, on January 21, 2002, the staff did not deviate from its normal practice of leaving for lunch at either 11:30 or 12:30 or from placing the clock sign on the door. If the staff is out of the office or the phone lines are busy, Haddick said, a caller has the option of leaving a message. She said that, on January 21, 2002, no such message was left by Silsbe.

At the conclusion of the trial, the parties submitted proposed findings of fact and conclusions of law. In his proposed findings and conclusions, Silsbe asserted that it was impossible to satisfy the terms of the option contract due to the Martin Luther King, Jr. holiday, the fact that Mattingly was out of town, and the difficulties he encountered in attempting to deliver notice to Mattingly's

---

[1] During the trial, Silsbe did not specify a time for the stop at Mattingly's office. Another witness, however, Joseph Gurley ("Gurley"), testified that he was with Silsbe on January 21 when Silsbe went to Mattingly's building. Gurley estimated that the stop at Mattingly's building was at approximately 1:30 p.m. During his deposition, Silsbe had testified that he had gone to Mattingly's office at 11:45 a.m. At trial, Silsbe claimed that his deposition testimony had been inaccurate. However, Silsbe also testified at trial that he called Mattingly's office at about 1:15 p.m., "in case they [the office staff] had gone to lunch," but that he visited Mattingly's office earlier.

[2] The notice Silsbe eventually delivered to Haddick was hand-written. When the trial court inquired about the discrepancy, Silsbe explained that after he did not deliver the typed notice, he contacted his attorney and explained the contents of the notice. Based on the information from Silsbe, his attorney hand wrote a second notification. This hand-written notice was delivered by Silsbe to Mattingly's assistant on January 22. Silsbe testified that he discarded the typed notice, believing it to be no longer necessary.

office on January 21, 2002. Silsbe argued that the parties did not intend for the option contract deadline to fall on a legal holiday, and contended that, when the contract was executed, the parties were unaware that January 21 was a national holiday.

On December 23, 2002, the trial court issued its findings of fact and conclusions of law. The trial court found that, though Mattingly was out of town on January 21, 2002, his office was open on that date. The trial court determined that "[t]he parties intended the option to be exercised one month from the date the parties entered into the option contract." The trial court then held, "The fact that [the deadline] given to exercise the option, January 21, 2002, was a legal holiday, does not extend the time required for acceptance." The trial court noted that Silsbe could have exercised the option either on or *before* January 21, 2002, but that Silsbe did not exercise the option in conformity with the contract. The trial court therefore concluded that the option had expired.[3] From that order, Silsbe now appeals.

On appeal, Silsbe argues that the trial court should have reformed the contract to set the option deadline on January 22, 2002. First, Silsbe asserts that, because (1) the mail could not be postmarked on January 21, 2002, due to the holiday, (2) Mattingly was unavailable to personally receive the notification, and (3) Silsbe was unable to make delivery at Silsbe's office, this amounts to impossibility of performance which justifies reforming the contract. Next, Silsbe argues that the contract should be reformed based on mutual mistake, because the parties were unaware that the day the option expired fell on Martin Luther King, Jr. Day. He notes that the contract contemplates that Silsbe would provide written notice on the deadline for exercising the option. Therefore, he contends, because the parties knew Mattingly would be out of town on January 21, 2002, the parties could not have intended for the deadline to fall on a national holiday, because this foreclosed both methods for Silsbe to exercise his option on the deadline. Houston Levee argues that Silsbe's appeal is frivolous and that Silsbe has engaged in a repeated pattern of delay in order to extract some economic return from Houston Levee. Therefore, Houston Levee seeks damages, including attorney's fees, for having to defend the appeal. *See* Tenn Code Ann. § 27-1-122 (2000).

Because this case was tried by the trial court without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d)**; *Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. *Campbell*, 919 S.W.2d at 35. The weight, faith, and credit granted to a witness's testimony lies first with the trial court, which has the opportunity to observe the witness's manner and demeanor while testifying. ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997).

---

[3]Although the trial court did not make express credibility determinations, it indicated that it was "[dis]satisfied with Mr. Silsbe's explanation regarding why he delivered a handwritten note to Mr. Mattingly's office on January 22, 2002, when he asserts that he attempted to deliver a typewritten note the day before on January 21, 2002." The trial court also noted the testimony of James Kee ("Kee"), Houston Levee's attorney. Kee testified that when Mattingly called him on January 22 to express his intent to exercise the option to purchase the property, Kee told Silsbe that he was late exercising the option. Kee testified that Silsbe replied that he was unaware that he had to exercise the option by a certain time.

Because the trial court is in a far better position than this Court to determine those issues, the credibility accorded by the trial court will be given great weight on appeal. *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

It is well settled that an option is only enforceable as a contract when it is exercised by an unqualified, absolute, unconditional, unambiguous acceptance, without reservation, and in accordance with the terms of the option. *See Pinny v. Tarpley*, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984). It is also well settled that an optionee's method of acceptance may be limited by the optionor's specifications for notification. *See Dobson & Johnson, Inc., v. Waldron*, 336 S.W.2d 313, 317 (Tenn. Ct. App. 1960). If an option contract specifies a certain manner in which the option must be exercised, the optionee must exercise the option according to those terms. *See Hall v. Crocker*, 241 S.W.2d 548, 549 (Tenn. 1951).

We first address Silsbe's argument that it was impossible for him to exercise his option on the deadline. In Tennessee, the doctrine of impossibility of performance is usually employed defensively, excusing nonperformance of a contract, rather than offensively, in order to reform a contract. *See, e.g., United Brake Sys., Inc. v. American Env'l Prot., Inc.*, 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997). Moreover, the doctrine of impossibility of performance is not applicable where performance becomes impossible due to factors which should have been foreseen and provided against. *Gardner v. Gilreath*, CA No. 174, 1990 WL 130894, at *6 (Tenn. Ct. App. Sept. 13, 1990); *Wilson v. Page*, 325 S.W.2d 294, 298 (Tenn. Ct. App. 1958). Silsbe has cited no Tennessee case applying the doctrine of impossibility of performance to an option contract, nor has our research revealed any such Tennessee cases. Instead, Silsbe cites a case from the Supreme Court of Michigan, *O'Toole & Nedeau Co. v. Boelkins*, 235 N.W. 820 (Mich. 1931), in support of his "offensive" application of the doctrine to an option contract. *O'Toole*, however, has no application to the case at bar. In *O'Toole,* the plaintiffs attempted to exercise a real estate option by the deadline. The defendants learned that the plaintiffs intended to exercise the option and failed to appear to accept plaintiffs' tender. *O'Toole*, 235 N.W. at 820. The *O'Toole* court found for the plaintiffs, holding that their failure to provide tender was excused because their attempt to do so "operate[d] as proof[] of readiness to perform" and "the tender [was] prevented through the contrivance of the persons to whom it should [have been] made." *Id.* at 821 (citation omitted).

In the present case, unlike *O'Toole*, there is no proof that Mattingly tried to avoid Silsbe. To the contrary, at the time the parties entered into the option, both were aware that Mattingly would be out of the city on January 21. Because of this, Mattingly gave Silsbe several phone numbers at which he could be reached on that day. The evidence does not preponderate against the trial court's finding that Mattingly's office was open on January 21, and that Mattingly's assistant was there to accept written notice on Mattingly's behalf. On January 21, 2002, Silsbe did not deliver written notice to Mattingly's assistant, leave a voice mail message at Mattingly's office, drop his typed notice in Mattingly's office mail slot, contact Mattingly on his mobile phone, or leave notice with Houston Levee's attorney.

Here, Silsbe simply has not shown that it was impossible for him to exercise the option in accordance with the contract. As noted by the trial court, Silsbe could have provided notice at any time from December 21, 2001 to January 21, 2002. Silsbe cannot rely on the fact that Mattingly was out of town on January 21, because Silsbe was aware that Mattingly would be out of town on that date at the time the contract was written. *See Gardner*, 1990 WL 130894, at *6; *Wilson*, 325 S.W.2d at 298. Silsbe was provided with a myriad of avenues for contacting Mattingly, even if he waited until the January 21 deadline, including hand-delivering a written notice to Mattingly's office, but he failed to do so. This argument is without merit.

We next address Silsbe's argument that reformation of the contract is warranted in light of the parties' mutual mistake in not being aware that the deadline for exercising the option fell on a national holiday. A written instrument may be reformed on the ground of mutual mistake when the mistake "is an act which would not have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition . . . ." *Williams v. Botts*, 3 S.W.3d 508, 509-10 (Tenn. Ct. App. 1999). However, "[i]nattention, as distinguished from mistake, is no ground for reformation." *Myrick v. Johnson*, 160 S.W.2d 185, 188 (Tenn. Ct. App. 1941) (citation omitted). Since the purpose of the doctrine is to permit the writing to fully and accurately reflect the parties' agreement, *see Lane v. Spriggs*, No. E2001-00163-COA-R3-CV, 2001 WL 1251236, at *3 (Tenn. Ct. App. Oct. 19, 2001), courts will not rewrite a contract "where the written instrument is drawn exactly as it was intended." *Myrick*, 160 S.W.2d at188 (citation omitted). Courts are to take into consideration the surrounding circumstances and any other factors which shed light on the parties' intentions. *City of Memphis ex rel. State v. Moore*, 818 S.W.2d 13, 16 (Tenn Ct. App. 1991).

In this case, the trial court expressly found that the parties to the contract intended to grant Silsbe one month from the date of the contract in which to exercise his option, and the evidence does not preponderate against this finding. The contract was executed on December 21, 2001, and the option expired on January 21, 2002. Thus, the option contract was written in accordance with the parties' intentions. The fact that the parties were unaware that the last day of the option period fell on Martin Luther King, Jr. Day did not preclude Silsbe from exercising his option, and any "mistake" by the parties about this fact does not warrant reformation of the contract. Therefore, we must conclude that the trial court did not err in finding that Silsbe failed to timely exercise the option and in declining to reform the contract as sought by Silsbe.

On appeal, Houston Levee seeks an award of damages under Tennessee Code Annotated § 27-1-122, asserting that Silsbe's appeal is frivolous and that he has engaged in a pattern of delay. We decline Houston Levee's request.

The decision of the trial court is affirmed. Costs of this appeal are taxed against Appellant Danny Silsbe and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE