IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

# CARROLL D. GRONER v. ON-SITE GRADING, INC.

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 98-0314     Howell N. Peoples, Chancellor**

---

**No. E1999-00219-COA-R3-CV - Decided - April 28, 2000**

---

This case involves a construction contract. When the plaintiff-owner decided that the project had not been completed in a timely fashion, he terminated the contract and sued the defendant-contractor for breach of contract. The defendant counterclaimed for wrongful termination of the contract. Following a bench trial, the Chancellor found for the defendant as to both claims and awarded damages on the counterclaim. Plaintiff appeals, arguing that the trial court erred in finding that the defendant did not breach the contract and in calculating the award of damages. As modified, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, as Modified; Case Remanded**

SUSANO, J., delivered the opinion of the court, in which FRANKS, and SWINEY, JJ., joined.

Arvin H. Reingold, Chattanooga, Tennessee, for the appellant Carroll D. Groner.

Don L. Smith, Nashville, Tennessee, for the appellee On-Site Grading, Inc.

**OPINION**

The plaintiff, Carroll D. Groner ("Developer"), entered into a contract with the defendant, On-Site Grading, Inc. ("Contractor"), for the construction of a roadway and sanitary sewer system on property being developed by the plaintiff. When the Developer decided that the project had not been completed on time, he terminated the contract and sued Contractor for breach of contract. Contractor counterclaimed for wrongful termination of the contract. After a bench trial, the Chancellor found in favor of the Contractor on both the claim and the counterclaim and awarded Contractor damages. Developer appeals, raising essentially two issues: (1) whether the trial court erred in finding that the Contractor did not breach the contract; and (2) whether the trial court erred in calculating damages.

I. *Facts*

The parties entered into a contract on June 13, 1997. Developer prepared the contract. It was signed by Developer and Carl Mashburn, the president of the defendant corporation. Developer was aware that Contractor was not at that time a Tennessee-licensed contractor. Under the terms of the contract, Developer was to pay Contractor $176,775 for the latter's work, and Contractor was to perform these services in accordance with the City of Chattanooga's regulations and pursuant to plans developed by Betts Engineering Associates, Inc. ("Betts"). When the contract was executed, the Betts plans indicated that the sewer lines were to be four to five feet deep. Because no "survey" was performed, the contract included a provision that "[a]ny rock encountered, which can't be moved by mechanical means, will be charged at $45 per cubic yard." The contract also included a provision reciting that "[a]ny major changes in grading or drainage will be charged extra." Because Developer wanted the project completed by the fall of 1997 so he could be prepared for the spring lot-buying season, the contract provided that Contractor was to complete the project "within ninety (90) consecutive calendar days after the date of starting." Developer was to make progress payments to Contractor every two weeks.

The project experienced numerous delays. One of these delays occurred when the City -- declining to approve the plans developed by Betts -- mandated that the sewer be constructed nine to eleven feet deep rather than four to five feet deep as the parties had originally contemplated. Two or three days after commencing work on the sewer in mid-August, Contractor encountered rock. Because of the change in the sewer depth, Contractor had to remove substantially more rock than it had originally anticipated. The new sewer depth, which necessitated the blasting and removal of the unanticipated rock, delayed the project as much as two months.

In addition to the delay caused by the increased sewer depth, the project experienced several other delays. Poor weather between September and December, 1997, delayed the project two to three weeks. Developer's delay in procuring a compaction test delayed the project approximately three weeks. Work that needed to be performed by utility companies before Contractor could continue its portion of the project caused a delay of approximately two weeks. Contractor at no time asked for a time extension. After the 90-day completion date passed, Developer continued to allow Contractor to work and encouraged it to finish.

Developer made progress payments to Contractor approximately every two weeks from July 7, 1997 to October 13, 1997. On October 24, 1997, Contractor sent a bill to Developer. This bill shows, among other things, the following:

| | |
|---|---|
| Original Contract | $176,775.00 |
| Additions on Sewer | 21,047.00 |
| Rock blasting/removal | 32,036.40 |
| Total Revised Contract | $229,858.40 |
| Less: Progress payments | 188,336.40 |
| Balance | $ 41,522.00 |

Contractor's secretary, Linda Mashburn ("Ms. Mashburn"), testified at trial that this bill did not reflect the extra expense incurred by Contractor for the additional rock blasting and removal necessitated by the increase in sewer depth. Developer, however, was under the impression that he only owed Contractor a total of $37,672 -- the $34,022 left under the original contract and $3,650 for storm drain extras.

Developer's next progress payment of $7,500 was made November 13, 1997, a month after the previous progress payment. In December, 1997, Developer learned that Contractor had neglected to pay some suppliers and that these suppliers had placed liens against the property.

On December 12, 1997, Contractor sent a letter to Developer seeking payment of "$34,022.40 under contract and $ 3,650.00 in change orders for a total of $37,672.40." Ms. Mashburn testified that this letter was not a final statement of what Developer owed Contractor and did not include the extra cost of rock blasting and removal. Mr. Mashburn stated in the aforesaid letter that he would return to the site when Developer paid $9,650. Developer replied that he would only issue payment after certain items were completed.

Contractor was at the site most of the week of December 15, 1997, attempting to finish the few remaining items. By Friday of that week, Developer still had not paid Contractor the amount Contractor had requested in its letter of December 12, 1997.

Developer and Mashburn met on December 22, 1997. At this meeting, Mashburn informed Developer that Developer not only owed the $37,672 left on the original contract but also owed Contractor for extra rock blasting and removal. Developer then terminated the contract. Contractor's witness testified that it could have completed the project for $9,600.

When Developer terminated the contract, he had paid Contractor a total of $195,836.40. He had withheld payment of $37,672 -- an amount he considered to be the balance remaining -- because Contractor had not finished the project. Contractor, on the other hand, considered the balance remaining to be $112,506. The difference between the two figures arises out of a disagreement between the parties over an alleged engineering error and an amount for rock removal that Contractor did not consider part of the original contract.

Another point of contention at trial concerned the price at which the rock removal was to be compensated. The contract provides that Developer is to pay Contractor for the removal of rock at a cost of $45 per cubic yard. The testimony is in conflict, however, as to whether this portion of the contract was modified so as to reduce the payment for rock removal to $31.72 per linear foot. Developer testified that the agreement had been so modified. Mashburn denied any such modification, but Contractor's supervisor at the site testified that the parties had agreed to a payment of $31.72 per linear foot and Ms. Mashburn testified that the rock was invoiced at $31.72 per linear foot.

The trial court found that Developer wrongfully terminated the contract because Contractor was not at fault in the delays that prevented the work from being performed within the time frame specified in the contract. Accordingly, the court held against Developer on his action for breach of contract and found for Contractor on its counterclaim for wrongful termination of the contract. The court also found, however, that Contractor was not entitled to $45 per cubic yard for rock removal, but rather was due the lesser figure of $31.72 per linear foot. The court then calculated Contractor's damage award as follows:

| | |
|---|---|
| Original contract price | $176,775.00 |
| Additional amount for sewer | 21,047.00 |
| Additional amount for storm drain | 3,650.00 |
| Additional amount for Betts' engineering error | 10,550.00 |
| Additional amount for rock blasting (at $31.72 per linear foot) | 32,036.40 |
| Subtotal | $244,058.40 |
| Less: Developer's payments | 195,836.40 |
| Contractor's award | $ 48,222.00 |

Developer now appeals both the trial court's finding that Contractor did not breach the contract and the amount of damages.

## II. *Standard of Review*

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise. Rule 13(d), Tenn. R. App. P.; **Wright v. City of Knoxville**, 898 S.W.2d 177, 181 (Tenn. 1995); **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. **Campbell v. Florida Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996); **Presley v. Bennett**, 860 S.W.2d 857, 859 (Tenn. 1993).

Our *de novo* review is also subject to the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. **Massengale v. Massengale**, 915 S.W.2d 818, 819 (Tenn.App. 1995); **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn.App. 1991).

III. *Analysis*

A. Contractor's Breach of Contract

The first issue we must address is whether the trial court erred in holding that Developer wrongfully terminated the contract. Developer argues that he was justified in terminating the contract because of Contractor's material breach. He argues that Contractor materially breached the contract (1) by failing to complete the project within the 90-day time frame called for in the contract[1]; (2) by failing to be properly licensed; and (3) by allowing materialmen's liens to be placed against the property.

Generally,

> [t]he circumstances significant in determining whether a party's failure to perform is material include:
> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

***McClain v. Kimbrough Constr. Co.***, 806 S.W.2d 194, 199 (Tenn.Ct.App. 1990) (quoting Restatement (Second) of Contracts § 241 (1979)).

More specifically, the question of whether failing to complete performance on time constitutes a material breach depends on whether "time is of the essence" with respect to the contract. *See* ***Shepherd v. Perkins Builders***, 968 S.W.2d 832, 833 (Tenn.Ct.App. 1997). Generally, time is not of the essence in construction contracts. ***Brady v. Oliver***, 147 S.W.

---

[1]The contract provision in question is as follows:

> The CONTRACTOR hereby agrees to commence work under this contract as soon as a Notice To Proceed is received and to fully complete the project within ninety (90) consecutive calendar days after the date of starting.

1135, 1140 (Tenn. 1911). Time may be of the essence, however, if made so by "express stipulation, a manifestation of intention from the contract or subject matter involved, or an implication from the nature of the contract or circumstances of the case." **Commerce St. Co. v. Goodyear Tire & Rubber Co.**, 215 S.W.2d 4, 11 (Tenn.Ct.App. 1948) (quoting 12 Am. Jur. *Contracts* § 308 (1938)). Time is not of the essence, and thus failure to complete performance by a time stated in a contract does not constitute a material breach, if the owner, knowing construction would not be completed before the deadline, allows the contractor to continue working after the date and encourages the contractor to finish the job. *See* **Shepherd**, 968 S.W.2d at 833.

Moreover, failure to perform a contract is excused if performance becomes impossible due to a cause not attributable to the non-performing party and the impossibility is "not among the probable contingencies which a man of ordinary prudence should have foreseen and provided for." **Wilson v. Page**, 325 S.W.2d 294, 298 (Tenn.Ct.App. 1958)(italics omitted). "In the construction context, we have imposed upon contractors the obligation to give their subcontractors a reasonable opportunity to perform." **McClain**, 806 S.W.2d at 198. Non-performance will not be excused, however, if the impossibility should have been foreseen and considered when entering into the contract. **Wilson**, 325 S.W.2d at 298.

Developer, relying on Mashburn's testimony that he always anticipates rock when entering into contracts of this kind, argues that the rock removal delay was foreseen by Contractor and, therefore, that Contractor should have protected itself against such a delay in the contract. Because it did not, so the argument goes, its failure to complete the project within the 90-day time frame is not excused. Contractor argues that the delays resulted from causes beyond its control, that it would have finished on time if it were not for these delays, and that, since time was not of the essence, its failure to complete the project on time was not a material breach.

We find that time is not of the essence of this contract. There is no express stipulation or manifestation of intention to make time of the essence. No such emphasis on time can fairly be implied from the language of the contract, the nature of the contract, or the circumstances of the case. Furthermore, Developer continued to allow Contractor to work and even encouraged it to finish after the completion deadline had passed. Additionally, the delays were not the fault of Contractor. Though Mashburn testified that he generally anticipates rock in a project of this kind, he also testified that he did not anticipate having to remove as much rock as he was required to remove after the change in the depth of the sewer line. The sewer had to be dug twice as deep as originally anticipated. This caused a significant delay, one for which Contractor was not responsible. Nor were other delays -- poor weather, having to wait for others to complete their work before Contractor could finish its work -- the fault of Contractor. We find that Contractor acted in good faith in attempting to complete its portion of the project as quickly as it could and that it was not given a reasonable opportunity to perform within the 90-day time frame. Therefore, we agree with

-6-

the trial court that Contractor did not breach the contract by failing to perform the contract on time.

Developer also argues that Contractor breached the contract because it was not licensed to do business in Tennessee and because, by failing to pay its suppliers, it allowed materialmen's liens to be placed against the property.

Developer cites no authority for the proposition that failure to be licensed constitutes a material breach under the facts of this case. The same may also be said of Developer's assertion concerning the liens. We are of the opinion that neither of these acts constitutes a material breach under the circumstances of this case. While entering into a contract of this kind without a license is a violation of T.C.A. § 62-6-103 (Supp. 1999), we do not believe such a violation, by itself, constitutes a material breach of contract, especially where, as here, the other contracting party is aware of the lack of a license when the contract is executed. Nor do we consider allowing materialmen's liens to be placed against the property to be a material breach, especially where, as here, Contractor was unable to pay the materialmen because Developer had not paid it. Accordingly, we find and hold that the evidence does not preponderate against the trial court's finding that Contractor did not breach the contract prior to Developer's termination of the contract.

## B. Cost to Complete

The next issue we must consider is whether the trial court erred in failing to reduce Contractor's damages by the amount that would have been expended by it to complete the work. As stated previously, the trial court awarded Contractor $48,222. It arrived at this figure by adding to the original contract price amounts for extra work and then subtracting what Developer had already paid Contractor.

An owner who improperly terminates a contract after the contractor has partially performed is liable to the contractor for damages. *See* **McClain**, 806 S.W.2d at 200-01. A contractor is entitled to an award of the net profit it would have made on the job had it been permitted to complete the contract. **Id**. There are three formulae which may be used to calculate this type of award:

> (1) The contract price (or so much as remains unpaid) less the amount that it would cost the builder to complete the job. This is the simplest and, where the builder can prove with reasonable certainty the cost of completing, the best. (2) The profit on the entire contract (total contract price less total builder's cost of construction, both expended and to be expended) plus the cost of the work actually performed. (3) For the work done, such proportion of the contract price as the cost of the work done bears to the total cost of doing the

-7-

> job, plus, for the work remaining, the profit that would have
> been made upon it.

*Id*. at 200-01 (quoting Charles T. McCormick, Handbook on the Law of Damages § 164, at 641 (1935)).

On this issue, we agree with Developer that the trial court's award was incorrectly calculated. The trial court made no mention of the expense Contractor would have incurred had it been allowed to complete the project. This resulted in an award of gross, rather than net, profit for a portion of the project.

Contractor argues that the trial court's award was not an award of profit at all. It asserts that its cost for the extra removal of rock was $105,921 and that the trial court, by allowing it to recover only $32,036.40 for this work, effectively negated any profit Contractor could have made on the project. Because it had no profit on the project, so the argument goes, the trial court's refusal to reduce the award further was proper.

We find that the evidence preponderates against Contractor on this point. The trial court made a credibility determination and found that the cost of the extra rock removal was $32,036.40. We find that the evidence does not preponderate against such a finding.

We note that Ms. Mashburn's testimony indicates that she subtracted, in her final statement of what Developer owed Contractor, $9,600 for "work incomplete." Accordingly, we find that the trial court's award to Contractor should be reduced by the $9,600 it would have cost Contractor to complete the project had it been allowed to do so.

### C. Alleged Engineering Error

The final issue is whether the trial court erred in awarding Contractor an amount reflecting an alleged engineering error by Betts. Betts allegedly placed grade stakes improperly which necessitated the raising of manholes at a cost of $10,550.

Contractor argues that this portion of the award is proper because the contract provides that "[a]ny major changes in grading or drainage will be charged extra." Developer argues that this portion of the award is erroneous for several reasons. Developer first contends that raising the manholes does not constitute a major change in grading or drainage. He goes on to argue that, since damages are measured by lost net profit, Contractor therefore bears the risk of unexpected expenses. Developer also complains that Contractor did not present this particular expense until trial, and then only as the final exhibit. Developer's final argument as to this expense is that it was not properly documented, and, therefore, Developer should not be made to pay it.

The trial court, by its award, found that Developer was responsible for this extra expense. The only mention of this expense in the record is found in Contractor's exhibit stating what Developer owes Contractor. Regarding this error, this documents says "Betts Eng. place [sic] grade stakes at final grade instead of sub-grade, therefore All [sic] man holes had to be raised and extra dirt had to [be] hauled in. Our expense on this was ($10,550.00)." The trial court found that this was a "major change[] in grading or drainage." The evidence does not preponderate against this finding. Under the contract, Developer is property chargeable with this item.

Developer's complaint that it was not aware that Contractor would be demanding reimbursement for this particular expense until the end of the trial is likewise without merit. While this expense is an additional element of damages claimed, it is not a separate and unique claim or issue that needed to be pleaded. In any event, proof of this element of damages was relevant to the case and Developer did not object to its introduction at trial. Thus, even if it constitutes a separate issue, it was tried by implied consent. Whether an issue has been tried by implied consent is a decision resting within the sound discretion of the trial court, and, as such, it cannot be disturbed absent an abuse of discretion. ***Zack Cheek Builders, Inc. v. McLeod***, 597 S.W.2d 888, 891 (Tenn. 1980).

Finally, with respect to proper documentation of expenses at trial, we recognize that "even if the existence of lost profits is established, recovery is properly denied if the plaintiff fails to provide 'a sufficient basis for the jury's computation of the damage,' by 'furnishing data from which the amount of the probable loss could be ascertained as a matter of reasonable inference,' and 'determined with reasonable certainty.'" ***Grantham and Mann, Inc. v. American Safety Prods., Inc.***, 831 F.2d 596, 602 (6th Cir. 1987) (internal citations omitted). We are of the opinion, however, that Contractor met this standard. It is true that the expense is listed as a single entry on Contractor's statement of what it considers Developer to owe Contractor. However, this is not the only evidence of this expense. Ms. Mashburn also testified that it was a legitimate expense by saying that

> Betts Engineering had made an error on the final grade and we had some extra work that had to be done. They put final grade instead of subgrade and, therefore, the manholes had to be raised and they had to have risers on them and more dirt had to be hauled in.

We find that Contractor provided a sufficient basis for the court's computation of damages.

IV. *Conclusion*

In summary, we find that the evidence does not preponderate against the trial court's finding that Contractor did not breach the contract and its holding that Developer improperly terminated the contract, and we affirm the Chancellor on these matters. We also affirm the

trial court's award of $10,550 to compensate Contractor for the extra work required as a result of the Betts error.  We find that the trial court erred, however, in failing to reduce Contractor's award by the $9,600 it would have cost Contractor to complete the project.  Accordingly, the trial court's award of damages of $48,222 is reduced to $38,622.

The judgment of the trial court, as modified, is affirmed.  This case is remanded to the trial court for enforcement of the judgment, as modified, and for collection of costs assessed below, all pursuant to applicable law.  Costs on appeal are taxed to the parties equally.