IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 13, 2016

**STATE OF TENNESSEE v. JOSEPH A. COLWELL, SR.**

**Appeal from the Circuit Court for Maury County**
**No. 23608    Russell Parkes, Judge**

_____

**No. M2016-00130-CCA-R3-CD – Filed September 28, 2016**

_____

Defendant, Joseph A. Colwell, Sr., appeals after being convicted by a jury of two counts of rape and two counts of incest and receiving an effective sentence of twenty years. Upon our review, we determine that the evidence was sufficient to support the convictions and that the trial court did not abuse its discretion in sentencing Defendant to a twenty-year sentence. Consequently, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jake Hubbell, Columbia, Tennessee, for the appellant, Joseph A. Colwell, Sr.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Brent Cooper, District Attorney General; and Kyle Dodd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In August of 2014, Defendant was indicted by the Maury County Grand Jury for two counts of rape, two counts of incest, and two counts of sexual battery by an authority figure[1] after Defendant's son and daughter accused him of rape. At the time of Defendant's arrest and indictment, D.C., the female victim, had just turned fifteen and

_____

[1] The sexual battery charges were dismissed by the State.

J.C., the male victim, was thirteen.[2] The children lived in Columbia with their father, who worked as a tow truck driver.

Detective Carl Shrake of the Columbia Police Department responded to a report regarding a rape. When he arrived at the mobile home, he met D.C. and J.C., Defendant's children. Their grandmother was also present at the time. According to D.C., Defendant raped her the night prior to Detective Shrake's visit and had done so on multiple occasions in the past. Detective Shrake noted that the child was visibly upset. J.C. confirmed that Defendant "made him do things" he did not want to do. Detective Shrake sent the children to Nashville to undergo rape evaluations.

At trial, D.C. was almost sixteen years of age. She testified that after enduring ongoing abuse, she finally told a family friend, Shelley Ladd, that Defendant "was raping [her] . . . and her brother." The victim explained that she was "forced" to have sex with her father multiple times even though she "would cry and tell [Defendant] not to [do it]." Defendant would tell D.C. to go into his bedroom. Once in the room, Defendant "would start taking off his clothes." He told D.C. to take off her clothes. When she did not comply, Defendant would take off her clothes. D.C. "always asked him why he did it to me . . . and he would tell me it was because we either scared his girlfriends away or we acted up. . . ." D.C. was "very afraid because it hurt." On the night before she reported the abuse, Defendant put a pillow "underneath her butt" before putting his penis in her vagina. She explained that Defendant "didn't use [a condom]" because "he got fixed so he wouldn't get anybody pregnant." The victim described that, at times, Defendant had her lie on her back and other times she was on her knees. She described Defendant as "rough," and he "would like make noises" or say, "That booty's mine," during the rapes. Defendant often ejaculated on the victim's stomach and "would be like touching her everywhere" when he finished. Defendant told the victim to go clean up and the victim would "use a piece of toilet paper to wipe it off my stomach or anywhere he got it and then I would take a shower."

D.C. was aware that her brother was also being raped. She discussed the abuse with her brother "a lot." D.C. threatened to tell someone about the abuse on more than one occasion, but she explained that she and J.C. were afraid to tell anyone because Defendant would "threaten [them], scare [them]." The victim described being "scared to death" because Defendant had "choke[d her] or jam[med] his finger in [her] or he would talk about how [the victims] would never get to see each other again [because they would end up in foster care]."

---

[2] It is the policy of this Court to refer to victims of sexual abuse by their initials.

J.C., who was fourteen at the time of trial, recalled that two days prior to telling someone about the abuse, Defendant raped him in the living room of their home. J.C. was watching television on the love seat when Defendant came into the room holding "torn-off pieces" of toilet paper in his hand. Defendant said, "Come on, son." J.C. knew what Defendant wanted because Defendant had done this before. J.C. was "afraid." Defendant made J.C. pull down Defendant's pants and boxers. J.C. was on his knees and Defendant made him "suck his thing" with his mouth. Defendant was lying on the couch with his hands on the back of J.C.'s head "pushing [his] head up and down." J.C. testified that he was "angry" at Defendant for "making [him] do it." When Defendant "finished," he "put his sperm in the toilet paper." J.C. never told his father that he did not want to do it because he "didn't want to hurt his feelings."

D.C. admitted that she and her brother had friends over to the house without their father's permission several times during the summer before they reported the abuse. On at least one of these occasions, the basement door was kicked in and someone caused damage to the door of her bedroom. There were also a few "holes" in the walls. D.C. acknowledged that Defendant put in a webcam to monitor activity in the house while he was at work. According to D.C., "someone" unplugged the webcam. J.C. testified that he and D.C. unplugged the webcam.

On the day they actually reported the abuse, D.C. and J.C. invited friends over to the house without their father's permission. Defendant's sister, Tammy Colwell, came to the house to check on things, presumably after Defendant realized that the webcam was unplugged. Tammy made D.C. and J.C. go to their grandmother's house and threatened to call the police on the visitors. D.C. testified at trial that getting caught with friends at the house had nothing to do with her disclosure of the rapes. Shelley Ladd, the person to whom the rapes were first disclosed, testified at trial that she was talking to D.C. on the day the children were caught with friends at the house. D.C. was upset about getting in trouble and was afraid that her father would beat her. Ms. Ladd explained that D.C. "broke down" and proceeded to tell her about the rapes. Ms. Ladd then spoke with J.C. before finding a police officer.

Detective Shrake spoke with Defendant about the allegations, describing Defendant's attitude as "blasé." Defendant denied the allegations and informed Detective Shrake that items were missing from his home because his children had other teenagers over to the house while he was at work. Defendant admitted that he had a vasectomy.

Based on the statements from D.C. and J.C., Detective Shrake obtained a search warrant for the residence. Officers removed computers, bed sheets, and couch cushion covers. Additionally, officers obtained the clothing worn by the children. The Tennessee Bureau of Investigation ("TBI") received the items. The search did not result in the

discovery of any pornographic material of children on the computers. Additionally, there was no semen found on the victims' clothing.

Defendant did not testify at trial. Briana Colwell, the victims' cousin, testified that D.C. had previously accused Defendant of rape. Ms. Colwell claimed that she visited D.C. one time when she had friends over without permission and that D.C. told her if she got caught she would "lie on her dad" by saying that he raped her.

At the conclusion of the trial, the jury found Defendant guilty of two counts of rape and two counts of incest. The trial court sentenced Defendant to ten years for each rape conviction and four years for each incest conviction. The trial court ordered the rape sentences to be served consecutively with each other but concurrently to the incest sentences, for a total effective sentence of twenty years' incarceration. Defendant now appeals the sufficiency of the evidence and his sentence to this Court.

*Analysis*

*Sufficiency of the Evidence*

First, Defendant insists that the evidence is insufficient to support his convictions. Specifically, he argues that the State failed to establish that J.C. did not consent to sexual contact. He also argues that the victims fabricated the rape allegations because they were in trouble for having friends over to the house without his permission. Lastly, he points to the State's failure to provide physical evidence to support the allegations. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses

for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

"Rape" is the unlawful sexual penetration of a victim by the defendant accomplished by force or coercion, without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent, or where the defendant knows or has reason to know that the victim is mentally incapacitated or physically helpless. T.C.A. § 39-13-503(a)(2)-(3). "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body into the genital or anal openings of the victim's, the defendant's or any other person's body, but emission of semen is not required. T.C.A. § 39-13-501(7). "Incest" is sexual penetration of one's child. T.C.A. § 39-15-302(a)(1).

Viewing the evidence in a light most favorable to the State, we conclude that the evidence was sufficient to support the convictions for two counts of rape and two counts of incest. D.C. and J.C. testified that they were the biological children of Defendant. Both of the victims told Ms. Ladd, their grandmother, and the police that Defendant raped them. They described in graphic detail exactly how Defendant committed the offenses. D.C. explained that Defendant called her into his bedroom, removed her clothing, placed a pillow underneath her bottom, and penetrated her vagina with his penis. D.C. testified that she protested the entire time, was in pain, and was afraid. Defendant ejaculated on her stomach and ordered her to shower. She knew that Defendant had a vasectomy, so it was not surprising that there was no sperm present. D.C. testified that Defendant choked her at least once when he was raping her and told her no one would believe her if she went to the police. Similarly, J.C. testified that Defendant raped him the last time two days prior to the police report. Defendant ordered J.C. to kneel and perform fellatio while Defendant lay on the couch and put his hands on the back of J.C.'s head. J.C. was upset and angry during the encounter, and he ran to his room afterward because he felt like he was going to throw up.

Defendant claims that the State did not prove that J.C. failed to consent. J.C. testified that during the ordeal, he was thinking that he "did not want to do it" but had never told Defendant that before because he was "scared." J.C. also testified that he never told his father that he did not want to do it because he "didn't want to hurt his feelings." In our view, the jury was entitled to infer from the testimony that J.C. did not consent to

executing fellatio on his own father. "[T]he inferences to be drawn from [the] evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006).

Moreover, the jury heard and discredited Defendant's theory that the children made up the allegations to avoid getting in trouble for having friends over to the house while Defendant was at work. D.C. acknowledged that she had friends over without her father's permission and that items at the house were damaged, but she testified that this had absolutely nothing to do with the report of the abuse. J.C. agreed, testifying that he would never lie about rape to avoid a "whipping." The jury assessed the credibility of the witnesses, clearly accrediting the testimony of D.C. and J.C.

Lastly, the State was not required to prove by physical evidence alone that the rapes occurred. We note that our supreme court has stated that "it has long been the rule in our state that the uncorroborated testimony of a minor victim may be sufficient to sustain a conviction for forcible or coercive sex offenses such as simple rape." *State v. Collier*, 411 S.W.3d 886, 899 (Tenn. 2013); *see also State v. McKnight*, 900 S.W.2d 36, 48 (Tenn. Crim. App. 1994) (holding that corroboration of minor victims' testimony not necessary to support a conviction for rape), *abrogated on other grounds by State v. Williams*, 977 S.W.2d 101 (Tenn. 1998); *Montgomery v. State*, 556 S.W.2d 559, 560 (Tenn. Crim. App. 1977) (stating that rape statute does not require that testimony of minor female victim be corroborated to support a conviction of rape). Moreover, the testimony of the victims was accredited by the jury, and this Court will not re-weigh or re-evaluate the evidence on appeal. *Reid*, 91 S.W.3d at 277 (quoting *Bland*, 958 S.W.2d 659). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The evidence was sufficient to support the convictions. Defendant is not entitled to relief on this issue.

*Sentencing*

Defendant next challenges his sentence. He complains about the application of several enhancement factors and the failure of the trial court to apply mitigating factors to his effective sentence of twenty years. Defendant also insists that consecutive sentencing was improper. The State insists that the trial court did not abuse its discretion.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper

application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

In fashioning Defendant's sentence, the trial court determined that three enhancement factors applied: (4) that the victims were particularly vulnerable due to age; (7) that Defendant committed the offenses to gratify his desire for pleasure or excitement; and (14) that Defendant abused a position of private trust as the biological father of the victims. T.C.A. § 43-35-114(1), (7), & (14). The victims were fourteen and fifteen at the time the abuse was reported, and D.C. testified that Defendant made grunting noises indicating pleasure during the rape. The record supports the application of the enhancement factors.

Defendant complains that the trial court did not mitigate his sentence because his conduct neither caused nor threatened seriously bodily injury. The trial court noted that application of this factor was inappropriate in a case where the victims clearly suffered extensive psychological trauma. The trial court did not abuse its discretion.

With regard to consecutive sentencing, Defendant's brief fails to provide any argument or legal authority to support his complaint. Therefore, this issue is waived. Tenn. R. App. P. 27(a)(7). However, we point out that the trial court provided reasons on the record clearly establishing at least one of the statutory grounds for consecutive

sentencing, so we afford the trial court's decision a presumption of reasonableness. *See State v. Pollard*, 432 S.W.3d 851, 861-62 (Tenn. 2013). The trial court determined that Defendant was "convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims." *See* T.C.A. § 40-35-115(b)(5). The trial court noted that Defendant raped the victims by various methods over a prolonged period of time and that the victims were Defendant's biological children. The record supports the trial court's findings. We conclude that the trial court did not abuse its discretion by ordering Defendant to serve his sentences for each rape conviction consecutively. Accordingly, Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE