IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2025 Session

## DR. DAVID BRUCE COFFEY v. BUCKEYE HOME HEALTH CENTER, INC.

**Appeal from the Circuit Court for Scott County**
**No. 9452      John D. McAfee, Judge**

———————————————————

**No. E2024-01086-COA-R3-CV**

———————————————————

In the Circuit Court for Scott County ("the Trial Court"), Dr. David Bruce Coffey filed a complaint alleging that Buckeye Home Health Center, Inc. ("Buckeye") breached its lease agreement with Dr. Coffey by failing to obtain fire insurance coverage on its leased portion of Dr. Coffey's building. The building burned down during Buckeye's tenancy. Buckeye filed a motion for summary judgment, arguing that it was impossible to obtain fire insurance coverage for only a portion of the building as required by the lease. The Trial Court granted Buckeye's motion. Dr. Coffey appealed. Upon our review, we conclude that there is a genuine issue of material fact and reverse the Trial Court's order dismissing Dr. Coffey's complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Robert Dziewulski and Ashleigh Beer-Vineyard, Knoxville, Tennessee, for the appellant, David Bruce Coffey.

Dudley W. Taylor, Knoxville, Tennessee, for the appellee, Buckeye Home Health Center, Inc.

# OPINION

## Background

This is the second time this case has been on appeal to this Court. In reversing the Trial Court's first order granting Buckeye's initial motion for summary judgment, this Court explained the procedural and factual history as follows:

> Plaintiff/Appellant Dr. David Bruce Coffey ("Dr. Coffey" or "Landlord") executed a lease with Defendant/Appellee Buckeye Home Health Center, Inc. ("Buckeye" or "Tenant"). The lease provided that Buckeye would rent office space located at 277 Underpass Drive, Oneida, Tennessee, from Dr. Coffey for one year beginning May 1, 2019. Dr. Coffey owned the entire building, which contained approximately 22,394 square feet; however, under the lease Buckeye occupied approximately 1,800 square feet of the building.
>
> The parties' dispute concerns a lease provision requiring Buckeye to obtain insurance coverage, including "fire coverage," on the "Premises." Section 12A of the lease provided:
>
> > Tenant agrees to secure an[d] keep in force from and after the date Landlord shall deliver possession of the Premises to Tenant and throughout the terms of this Lease, at Tenant's own cost and expense: fire coverage; theft coverage; open peril coverage; plate glass insurance with extended coverage for all plate glass window frames in the Premises; and public liability insurance coverage on the Premises for every portion thereof, with a contractual liability endorsement on the policy, in a company qualified to transact business in Tennessee, stipulating limits of liabilities of not less than 1,000,000 for an accident affecting any one person; not less than 2,000,000 for an accident and affecting more than one person; and 300,000 property damage . . . .
>
> The parties agree that the term "Premises" is not defined in the lease. They also agree that the lease referred to that portion of Dr. Coffey's property occupied by Buckeye as the "Premises," but with no more specific or other identification. The fire insurance provision does not identify a specific area or space as the "Premises."
>
> A fire destroyed Dr. Coffey's building on January 30, 2020. Buckeye had obtained insurance from The Southern Agency, Inc. to cover its contents

- 2 -

located in the office space it leased from Dr. Coffey. However, Buckeye's insurance policy neither named Dr. Coffey as an additional insured nor did it provide the required coverage type or limits. Buckeye agrees that it "did not have any fire loss insurance that would pay for the loss of [Dr. Coffey's] building or any part thereof."

On May 13, 2021, Dr. Coffey filed a complaint against Buckeye for breach of the lease contract and alleged failure to maintain a fire insurance policy in accordance with the lease. Buckeye moved for summary judgment arguing that: (1) the lease failed to provide an enforceable obligation with respect to fire insurance because it failed to define the term "Premises"; and (2) regardless of whether the term "Premises" was interpreted to mean a portion of Dr. Coffey's building or the entire structure, it was impossible for Buckeye to obtain fire coverage.

To buttress its impossibility argument, Buckeye submitted the affidavit of Derek Wirz, the principal owner and producer of The Southern Agency, Inc. Mr. Wirz has been an insurance agent for more than thirty years and holds several industry designations, including a Certified Insurance Counselor ("CIC") designation. Mr. Wirz indicated in his affidavit that it would not have been possible to write effective fire insurance coverage for only the portion of the building that Buckeye occupied. He further indicated that, "it would not be possible to write effective building insurance coverage insuring against loss by fire for the entirety of the building on behalf of Buckeye." He noted that "Buckeye did not own, nor did Buckeye have an insurable interest in any part of the building."

In response to Buckeye's motion for summary judgment, Dr. Coffey submitted the affidavit of Chad Daniel, a commercial lines manager at Daniel Insurance Agency, LLC.[1] Mr. Daniel stated that he has been a licensed insurance agent for approximately sixteen years. Mr. Daniel asserted that it "would have been possible to write effective fire insurance coverage for only a portion of [Dr. Coffey's] commercial building." In a subsequent deposition, Mr. Daniel admitted that he had never obtained a policy for a tenant leasing only a portion of a building. He testified that his statement that it would be possible was based on conversations he had with underwriters at two different insurance companies.

---

[1] Buckeye subsequently deposed Mr. Daniel and included his deposition testimony in a supplement to its motion for summary judgment. The summary of Mr. Daniel's testimony is taken from both his affidavit and his deposition testimony.

By order entered June 22, 2022, the trial court granted summary judgment in Buckeye's favor, finding that "[t]he Lease referred to that portion of [Dr. Coffey's] property occupied by [Buckeye] as the 'Premises,' but with no specific identification as to the square footage or otherwise." The trial court held that Dr. Coffey's "failure . . . to define the term 'Premises' in the Lease renders the requirement that [Buckeye] obtain fire coverage for the 'Premises' unenforceable." The trial court did not address whether it was impossible for Buckeye to obtain fire insurance on only a portion of Dr. Coffey's building. Dr. Coffey appealed.

*Coffey v. Buckeye Home Health Ctr., Inc.*, No. E2022-00928-COA-R3-CV, 2023 WL 1498760, at *1-2 (Tenn. Ct. App. Feb. 3, 2023) ("*Coffey I*").

This Court reversed the Trial Court's grant of summary judgment and held that the term "Premises" in the lease referred to the "approximately 1,800 square feet that Buckeye rented and occupied within the larger commercial building until it was destroyed by fire." *Id.* at *4. This Court, however, concluded that the Trial Court's order did not address the issue of impossibility nor Daniel's and Wirz's competing opinions. *Id.* at *5. This Court ruled: "Whether it was possible to underwrite effective fire insurance coverage to satisfy the terms of the lease is a genuine issue as to a material fact. Because the trial court did not rule on this issue, we remand for further proceedings consistent with this opinion." *Id.*

After *Coffey I* was issued, Buckeye filed a renewed motion for summary judgment and statement of undisputed material facts in the Trial Court. Buckeye stated that Jon Allred was vice president of operations at Quality Private Care Companies, the parent company of Buckeye. Allred met with Dr. Coffey in the Spring of 2019, and Dr. Coffey provided him with a draft lease. After reviewing the draft lease with another officer of Buckeye, Allred responded to Dr. Coffey by email, objecting to a handwritten notation included in the draft that provided: "Landlord will provide insurance coverage and tenant will pay 5% of cost." Allred informed Dr. Coffey that Buckeye carried its "own insurance on the contents." Dr. Coffey responded with a new draft, obligating Buckeye to obtain certain insurance coverage, including "fire coverage." Allred signed the updated lease agreement with the handwritten notation removed.

Buckeye's undisputed material facts also relied upon the affidavit of Wirz, who explained:

I have been asked if my agency could have obtained fire insurance on that portion of the Plaintiff's premises occupied by Buckeye after the occurrence. I could not since it is not possible to write effective fire insurance coverage for only a portion of a building unless said building was a condominium. Further, it would not be possible to write effective building insurance coverage insuring against loss by fire for the entirety of the

- 4 -

building on behalf of Buckeye. Buckeye did not own, nor did Buckeye have an insurable interest in any part of the building.

In summary, it is my opinion based on my experience and training that it was not possible for Buckeye to obtain effective building insurance coverage against loss by fire on behalf of Plaintiff. This coverage was not even required by lease.

(Paragraph numbering omitted.)

Dr. Coffey filed a competing motion for summary judgment. Dr. Coffey argued that Buckeye could not establish the defense of impossibility or impracticability because it could not prove that such impossibility or impracticability was unforeseeable. Dr. Coffey argued:

As a company regularly entering into lease agreements and obtaining insurance coverage on leased spaces, Buckeye should have known or believed it possible the requested insurance would be difficult to obtain. John Allred ("Allred") acting as VP of operations for Buckeye's parent company, Quality Private Care Companies ("Companies") reviewed the Lease along with Paula Allred, another officer of Companies. Defendant does not need to be an expert in insurance to meet the should have known standard created by the rule governing existing impracticability.

Dr. Coffey also argued that Buckeye should not be excused from liability because it failed to make a good faith effort to uphold its obligation under the lease. Dr. Coffey further argued that Buckeye breached the covenant of good faith and fair dealing by failing to notify Dr. Coffey that it believed the required insurance was unobtainable.

Buckeye filed a response to Dr. Coffey's statement of undisputed material facts. Buckeye disputed that it consented to all the terms and conditions of the lease, despite Allred's signature on the lease. Buckeye agreed that it did not maintain any insurance coverage other than its premises liability insurance but claimed that it was impossible to obtain fire insurance on only a portion of a building. Buckeye disputed that Dr. Coffey suffered any damages, given that the entire building was subject to insurance coverage provided by Grange Insurance Company ("Grange"). Buckeye cited to a copy of Dr. Coffey's complaint against Grange as evidence.

Buckeye also included additional undisputed material facts. The relevant additional facts included: (1) Buckeye had leased property from Dr. Coffey on several occasions; (2) Buckeye never knowingly agreed in any of those leases to pay all or a portion of fire and extended property coverage insurance; (3) Allred pointed out to Dr. Coffey that the lease draft contained a handwritten notation that Dr. Coffey would provide insurance coverage

and Buckeye would pay 5% of that cost; (4) Allred objected to this language; (5) a revised lease was sent to Buckeye with the handwritten notation removed; (6) Allred signed the lease on behalf of Buckeye; (7) Dr. Coffey obtained insurance coverage from Grange; (8) the Grange policy provided coverage for one year starting on August 28, 2019, and included property damage caused by fire with policy limits of $2.1 million; (9) Grange denied liability in its answer to Dr. Coffey's complaint against it; and (10) Dr. Coffey failed to offer any evidence that would allow the Trial Court to determine the amount of damages allocable to the portion of the building leased by Buckeye, which constituted about 5% of the building.

Dr. Coffey filed a response to Buckeye's statement of undisputed material facts. He argued that it was possible to obtain fire insurance coverage for only a portion of the building and disputed Buckeye's assertion that it did not own or otherwise have an insurable interest in any part of the building. In support, Dr. Coffey cited to Chad Daniel's affidavit.

According to his affidavit, Daniel is a "commercial lines manager at Daniel Insurance Agency, LLC" and has been a licensed insurance agent for sixteen years. In the affidavit, Daniel stated:

I have been duly informed and have received sufficient information, regarding: (a) the size and scope of Plaintiff's entire commercial property; (b) Defendant's portion of Plaintiff's property thereof; (c) the lease agreement between the parties; and (d) the type of insurance required in said lease agreement at paragraph 12(A), in order to form my opinion on the topic.

I have been asked if my agency, Daniel Insurance Agency, LLC, could have obtained fire insurance on Defendant's portion of Plaintiff's building. The answer to that question is "yes." It would have been possible to write effective fire insurance coverage for only a portion of Plaintiff's commercial building.

Additionally, it is possible to create an insurable interest by contract if the insured is leasing the property from the owner. As is commonly the case in triple net leases.

In summary, it is my opinion, based on my experience and training that it was possible for Defendant to obtain effective building insurance coverage against loss by fire on behalf of Plaintiff for their portion of the building.

(Paragraph numbering omitted.)

Dr. Coffey later filed a supplement to his statement of undisputed material facts, noting that after a June 2023 hearing, "it was agreed that the matter should be continued to allow parties further opportunity to acquire further evidence that would show whether property and casualty insurance, including fire coverage, is obtainable on a portion of a building." To that end, Dr. Coffey presented the affidavit of David Stegall, "the Principal Consultant and Founder of Risk Consulting & Expert Services (RCES)." Stegall has "over 45 years of insurance, reinsurance, bond and risk management industry experience." Stegall claimed that Buckeye's insurer had erroneously denied Buckeye's claim.

Dr. Coffey filed another affidavit from Stegall, in which Stegall stated:

> Additionally, I have reviewed the lease agreement and paragraph 12(A) prior to forming my opinion and have been informed by Plaintiff's counsel that Defendant is not believed to have any tortious liability related to the fire.

> It is possible for a tenant renting a portion of a building to obtain insurance covering fire damage, not caused by the tenant, that covers any damage to the portion of the building rented by the tenant and pays to the property owner as an additional insured.

> An insurable interest can be and is often created by lease agreement or other contract.

> A tenant has an insurable interest in the premises for which they lease from a landlord.

> As stated in my previous affidavit, from my reading of the lease and policy, I believe that the claim made by Buckeye Home Health Center, Inc. was erroneously denied by Cincinnati Specialty Underwriters Insurance Company and the full $500,000 limit was triggered by the coverage grant in the policy.

(Paragraph numbering omitted.)

After taking Stegall's deposition, Buckeye filed a second supplemental memorandum in support of its motion. Buckeye cited to the following responses from Stegall in his deposition:

> Q. Well . . . how the heck do you factor in the possible loss of a portion of the structure where you only have a small percentage leased, and that part is supposedly insured?

A. Well, you wouldn't. You would -- I mean, if the lease says you have to insure the building, you would have to underwrite the whole building.

Q. Yes, sir. . . . But again, where you have a mandate supposedly for a tenant occupying 10 percent of a building to provide insurance, property and casualty insurance on 10 percent of the building, how do you [do] that?

A. Well, you don't. I mean, you would insure the whole -- you can't insure just 10 percent of the building. Well, I guess you could have 10 different insureds that would add up to a hundred and then have each one of them named on the policy. That's a little unusual, but it could be done.

* * *

Q. Do you have, sir, a reference, a specific reference for the point that a tenant in a multi-use building can obtain fire and property coverage for just that portion of the building occupied by the tenant?

A.Well, no. I haven't. I can't point to one in what you described. But that's not what we're dealing with here. It didn't say, just this portion of the building. It said, the building, if I understood the lease correctly. And I'm not interpreting the lease. But I thought that's what it said. So I would think -- now, I had not seen the exhibit that you just asked me to bring up. That's news to me. But I did not know that in the past. I guess you can -- I don't know. I'll let you lawyers decide how that comes into play. But there is no question -- in fact, if you did Couch on Insurance and just put in insurable interest, it's going to pop up that three things have an insurable interest: the owner; the tenant, if he has a lease; and the financier, the bank or mortgage company. All of them have an insurable interest in the property.

Buckeye argued that Stegall's affidavit was based on his incorrect assumption that the lease required Buckeye to obtain fire insurance coverage on the whole building.

In an order entered in September 2024, the Trial Court granted Buckeye's motion for summary judgment, making the following relevant findings of fact:

> Wirz has been an insurance agent for more than 30 years and holds several industry designations, including the CIC (certified insurance counselor) designation.

> Plaintiff opposed the Motion in reliance on an affidavit from its expert David Stegall, eminently qualified in property and other types of insurance.

- 8 -

Stegall asserted in that affidavit that such property coverage could be obtained by a tenant. He further concluded that the insurance actually obtained by Defendant would have satisfied the purported lease requirement, but for the fact that Plaintiff was not named as an insured.

However, the insurance policy in question was clearly limited to liability coverage.

Upon the taking of the deposition of Stegall, the following exchange occurred:

Q. But again, where you have a mandate supposedly for a tenant occupying 10 percent of a building to provide insurance, property and casualty insurance on 10 percent of the building, how do you do that?

A. Well you don't. I mean, you would insure the whole - you can't insure just 10 percent of the building.

Stegall then added the following:

A. Well, I guess you could have 10 different insurers that would add up to hundred and then have each one of them named on the policy. That's a little unusual but it could be done.

The Court's deems the next above recital to be speculative and more importantly, there is no provision in the lease that requires the Defendant to join with all of the tenants to obtain the policy providing property coverage for the entire building.

Moreover, the law of the case based upon the ruling of the Court of Appeals is that the term "Premises" is deemed to be only that portion of the Building occupied by the Defendant as tenant.

(Paragraph numbering omitted.) Dr. Coffey appealed.

### Discussion

Although not stated exactly as such, Dr. Coffey raises the following issues on appeal: (1) whether the Trial Court erred in finding no genuine issue of material fact as to whether the defense of impossibility applied and (2) whether the Trial Court erred in finding no genuine issue of material fact as to whether Buckeye violated the covenant of good faith and fair dealing. Buckeye seeks an award of attorney's fees on appeal.

Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\*\*\*

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*[*, Ltd. v. Zenith Radio Corp.*], 475 U.S. [574,]

- 10 -

586, 106 S.Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

On appeal, Dr. Coffey argues that there is a genuine issue of material fact as to whether it was impossible for Buckeye to obtain fire insurance coverage on only a portion of the building. We agree. The parties presented three competing affidavits to the Trial Court. In his affidavit, Wirz clearly stated that it was not possible to obtain fire insurance on only a portion of a building. In contrast, Stegall's affidavit clearly stated that it was possible to obtain fire insurance on only a portion of a building. He, however, later expressed in a deposition that "you would insure the whole -- you can't insure just 10 percent of the building," seemingly contradicting his affidavit. Stegall operated under the misapprehension that the lease called for Buckeye to insure the entire building. Obviously, this undermines his affidavit. In addition, this Court has already determined that the premises to be insured as referenced in the lease pertained only to the portion Buckeye was leasing.

Despite Stegall's contradiction and his misapprehension of the lease, we cannot ignore the other affidavit offered by Dr. Coffey in response to Buckeye's motion. Dr. Coffey also presented Daniel's affidavit, in which Daniel clearly affirmed that Buckeye could have obtained fire insurance on only a portion of the building. The Daniel affidavit therefore creates a genuine issue of material fact as to whether Buckeye could have fulfilled its obligation under the lease.

Buckeye argues that the claims of Daniel's affidavit fell apart during his deposition, much like the claims of Stegall's affidavit. In support, Buckeye points to Daniel's statement that the lease did not contain enough information to enable him to write a fire insurance policy and that he admitted he had never written coverage for only a portion of a building. In making these arguments, Buckeye reads too much into Daniel's testimony and draws inferences unsupported by his testimony.

- 11 -

Buckeye cites to the following interaction between Daniel and Buckeye's counsel:

Q. Okay. Now, let's say that our client brought this lease to you and said, we need to obtain all of the fire insurance as described in this Paragraph 12. What would your first step be?

A. Well, I would get more information on exactly what they need covered. Because I need to know about the size of the building, their contents, if they made any changes to the building, what is the landlord expecting them to carry. There's not enough information in the lease by itself for me just to take it and write a policy without asking more questions.

* * *

Q. In this instance with this lease, Exhibit-1, how would you and/or the underwriter determine the policy limit with respect to the fire coverage?

A. Oh, there's no way to determine that unless I ask the person. Because this doesn't -- there's not enough information on here to determine the amount that needs to be covered without actually inquiring further.

* * *

Q. Okay. Then what I was going to say was, that we might as well just get to the nitty-gritty. And I think you understand that the issue here is that we do not believe you can obtain fire coverage of a portion of a building and yet you say that you can?

A. Oh, yeah, absolutely. Sorry.

* * *

A. . . . You asked if I ever actually issued a policy in which a portion of the building was covered. Okay.

Q. Yes, sir.

A. No. Only the whole building. But I did speak directly with an underwriter from two of my insurance companies, and to confirm that they could, in fact, do it for a portion of the building.

* * *

- 12 -

A. . . . I have not specifically issued a policy with someone with a portion. When I spoke with the Hartford, they — the underwriter I spoke to said they had issued policies in the past for portions of the building, and they would do it in this case. And then I spoke with another company called Celina, and they said they would also do it for a portion of the building.

Q. Okay. So your observation that it is possible to write fire insurance on only a portion of the building is based on these two discussions you described with underwriting experts?

A. Yup.

First, Daniel's statement that he would need more information to write the policy does not *ipso facto* mean that it was impossible to provide coverage for a portion of the building. Daniel's testimony is clear: obtaining fire insurance coverage on a portion of a building is possible. Simply because Buckeye would have to provide the insurance company with additional information about the building does not equate to impossibility of coverage. Second, the fact that Daniel has never written a policy for a portion of a building does not establish that such policy coverage is an impossibility. This latter point in particular goes to the weight of the evidence, and the focus of a motion for summary judgment is not the weight of the evidence, but rather if there is evidence of a genuine issue of material fact. *Vaulton v. Polaris Indus., Inc.*, No. E2021-00489-COA-R3-CV, 2022 WL 628502, at *13 (Tenn. Ct. App. Mar. 4, 2022) ("At the summary judgment stage, we do not weigh the evidence, nor do we engage in credibility determinations regarding the deponents.").

Buckeye also takes issue with the fact that Daniel drew his conclusion based upon conversations with two different underwriters. This argument also fails. Tennessee Rule of Evidence 703 provides in relevant part:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

We do not know whether information provided by underwriters is of the "type reasonably relied upon by experts" in this field, although we suspect it is. Nevertheless, on a motion for summary judgment, "we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Williams v. Hardison*, 704 S.W.3d 807, 816 (Tenn. Ct. App. 2024). There was no evidence presented as to the issue of whether the underwriters' information was of the "type reasonably relied

upon by experts" in the field of fire insurance, and Buckeye points to no ruling from the Trial Court on this issue or a ruling excluding the affidavit. We, accordingly, find that Daniel's affidavit creates a genuine issue of material fact. *See Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009) ("If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists.").

Even if this type of insurance coverage was impossible for Buckeye to obtain, the Trial Court did not address Dr. Coffey's argument that Buckeye failed to present evidence establishing that the alleged impossibility was not foreseeable. This Court has previously held that "the doctrine of impossibility of performance is not applicable where performance becomes impossible due to factors which should have been foreseen and provided against." *Silsbe v. Houston Levee Indus. Park, LLC*, 165 S.W.3d 260, 265 (Tenn. Ct. App. 2004). Buckeye did not produce any evidence to establish whether the impossibility of this type of coverage was unforeseeable. Given that Buckeye bore the burden of proof at the summary judgment stage as the moving party, this lack of evidence establishes that a genuine issue of material fact remains. *Rye*, 477 S.W.3d at 264 ("[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.").

As for Dr. Coffey's second issue, whether the Trial Court erred in granting Buckeye's summary judgment motion because Buckeye breached the covenant of good faith and fair dealing, we decline to address this issue insofar as its resolution relies upon the outcome of the first issue. Furthermore, the Trial Court did not address this issue. We therefore remand this issue for the Trial Court's consideration as well.

Lastly, Buckeye requests an award of attorney's fees on appeal based upon Tenn. Code Ann. § 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Given the favorable outcome of Dr. Coffey's appeal, we decline Buckeye's request.

For the foregoing reasons, we reverse the Trial Court's order granting Buckeye's motion for summary judgment and remand for further proceedings consistent with this Opinion.

**Conclusion**

We reverse the Trial Court's order dismissing this case on a motion for summary judgment and remand for proceedings consistent with this Opinion and collection of costs below. We decline to award the appellee attorney's fees. Costs of the appeal are assessed against the appellee, Buckeye Home Health Center, Inc.

_____
D. MICHAEL SWINEY, CHIEF JUDGE